**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LATOYA GILLIAM** and **KAYLA McCROBIE,** individually and on behalf of all others similarly situated**,** | : COMPLAINT – CLASS ACTION |
| Plaintiffs, | : CIVIL ACTION NO. |
| v. | : |
| **UNITED STATES DEPARTMENT OF AGRICULTURE** and **GEORGE ERVIN PERDUE III**, in his official capacity as Secretary of the United States Department of Agriculture, | : |
| Defendants. | : |

<u>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

<u>**PRELIMINARY STATEMENT**</u>

1.      Plaintiffs Latoya Gilliam and Kayla McCrobie bring this action on behalf of themselves and a class of residents of the Commonwealth of Pennsylvania substantially and irreparably harmed by United States Department of Agriculture ("USDA") guidance and policy that unlawfully narrows eligibility for emergency allotments under the Supplemental Nutrition Assistance Program ("SNAP") provided by Congress as a result of the coronavirus (SARS-CoV-2, hereinafter referred to as "COVID-19") pandemic.

2.      The COVID-19 pandemic is an unprecedented public health emergency. Congress passed the Families First Coronavirus Response Act ("FFCRA"), P. L. 116-27, with the intent to provide an emergency response to mitigate the devastating effects of the global

COVID-19 pandemic on the American public, including increased economic hardship and decreased food security.

3.      Section 2302(a)(1) of the FFCRA requires the Secretary of Agriculture to provide emergency allotments for all households receiving SNAP benefits to address "temporary food needs" caused by the extraordinary circumstances of the pandemic and attendant economic and public health crisis.  FFCRA § 2302(a)(1).

4.      Despite this, USDA issued guidance interpreting "emergency allotments" authorized under Section 2302(a)(1) of the FFCRA as "similar to supplements authorized during disasters under Sec. 5(h)(3)(A) of the Food and Nutrition Act of 2008" that are unavailable to households receiving maximum monthly benefits and preventing state SNAP administrators, including the Pennsylvania Department of Human Services ("PA DHS"), from providing these emergency allotments of SNAP benefits to the neediest households, whose net incomes are lowest, and who therefore normally receive the most in SNAP benefits.  In Pennsylvania, the USDA's guidance results in exclusion of nearly 40% of SNAP recipients from emergency SNAP allotments, including many elderly people, families with young children, and people with disabilities, in direct violation of the law.

5.      USDA's guidance, however, is unlawful because it is both arbitrary and capricious and contrary to law.

6.      USDA's guidance is arbitrary and capricious because it provides no explanation for its invocation of Section 5(h)(3)(A) of the Food and Nutrition Act of 2008 ("FNA") to interpret "emergency allotments" authorized under Section 2302 of the FFCRA as "supplements" purportedly authorized under Section 5(h)(3)(A) of the FNA.  Section 5(h)(3)(A) of the FNA does not authorize "supplements."  It authorizes "emergency allotments" available to

2

all SNAP households, regardless of the value of their regular SNAP benefit, to replace food destroyed by a disaster.

7.      USDA's guidance is also arbitrary and capricious because it fails to account for an important aspect of the problem before it in interpreting Section 2302 of the FFCRA. Congress made Section 2302 of the FFCRA part of the SNAP statutory scheme.  SNAP seeks to raise "levels of nutrition among low-income households."  Therefore, an important aspect of the problem before the USDA in implementing Section 2302 of the FFCRA was raising the "levels of nutrition among low-income households" amidst the COVID-19 public health emergency. The guidance, however, provides no indication that USDA considered that its interpretation of FFCRA denies emergency subsistence benefits to the lowest income households – effectively **decreasing** the level of nutrition among those households and frustrating the purpose of SNAP – while providing emergency subsistence benefits to households with relatively higher incomes.

8.      USDA's guidance is contrary to law because it contradicts the unambiguous language of and effects a fundamental change in the FFCRA.  The USDA guidance at issue, while purporting to interpret Section 2302(a)(1) of the FFCRA, finds that emergency allotments "are supplements to a household's SNAP benefits, similar to supplements authorized during disasters under Sec. 5(h)(3)(A) of the Food and Nutrition Act of 2008," to be "added on to a household's monthly benefit so the total household benefit amount may equal the maximum benefit amount for their household size."

9.      This guidance wrongly limits emergency payments by capping overall benefits at pre-pandemic levels, despite the drastic changes in circumstances.  As a result, emergency benefits authorized by Congress have been made available only to SNAP households with relatively higher incomes, who normally receive less in SNAP.

3

10.     To be eligible to receive any SNAP benefits, a household's net annual income must generally be at or below the federal poverty level.  In Pennsylvania in 2020, the federal poverty level is equal to an annual individual income of $12,760, or $26,200 for a family of four. Under SNAP, the maximum benefit for a household of one person is $194 per month, or $2.08 per meal in a thirty-one-day month, with a minimum benefit of $16 per month for households of one or two who have higher incomes.  The maximum monthly SNAP benefit for a family of four is $646, or $161.50 per month for each member of the family, or $1.73 per person per meal in a thirty-one-day month.

11.     Despite the clear language of Section 2302(a)(1) directing the Secretary to provide "emergency allotments" to households receiving SNAP during the COVID-19 pandemic, under USDA's guidance a household of one person with an entire food budget of $2.08 per meal each month **receives no additional funds at all** during the pandemic, while a household of one person with considerably higher income that qualifies for the minimum SNAP benefit of $16 per month receives an emergency allotment of $178 per month to meet his or her temporary food needs.

12.     USDA's interpretation of the FFCRA is contrary to clear Congressional intent and the structure of SNAP, and is arbitrary and capricious in violation of the requirements of the Administrative Procedure Act ("APA").  5 U.S.C. §§ 701-706.  Plaintiffs seek declaratory relief and preliminary and permanent injunctive relief so that they can receive SNAP emergency allotments to address their urgent food needs during this crisis.

## JURISDICTION

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

4

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B).  Plaintiff Latoya Gilliam resides in Philadelphia, and she and other class members residing in the Eastern District of Pennsylvania have been denied emergency allotments in the amount to which they are entitled and suffered the consequences of this denial within the District.

15.     Plaintiffs' claims for declaratory and injunctive relief and other appropriate relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rule 57 of the Federal Rules of Civil Procedure, and 5 U.S.C. §§ 701-706.

## PARTIES

16.     Plaintiff Latoya Gilliam is a resident of Philadelphia in Philadelphia County, Pennsylvania.  As of March 18, 2020, when the FFCRA was first enacted, she was eligible for and receiving the maximum monthly SNAP benefit for her household of two people, which includes herself and her two-year-old son.  She has remained eligible for, and has received, the maximum monthly SNAP benefit for her household in each month since then.

17.     Plaintiff Kayla McCrobie is a resident of Pittsburgh in Allegheny County, Pennsylvania.  As of March 18, 2020, when the FFCRA was first enacted, she was eligible for and receiving the maximum monthly SNAP benefit for her household size of one person.  She has remained eligible for, and has received, the maximum monthly SNAP benefit for her household in each month since then.

18.     Defendant USDA is a cabinet agency in the Executive Branch of the federal government and an "agency" under the APA.  5 U.S.C. § 551(1).  USDA is charged with implementing SNAP, which provides nutritional assistance to low-income individuals throughout the United States.

19.     Defendant George Ervin Perdue III is the Secretary of the USDA.  As Secretary, Defendant Perdue is responsible for all actions taken by the USDA and for ensuring USDA's compliance with the laws of the United States.  He is sued in his official capacity.

## CLASS ACTION ALLEGATIONS

20.     The plaintiff class consists of all persons living in Pennsylvania who are, were or will be eligible for SNAP benefits during the period for which Congress has authorized the issuance of emergency allotments during the COVID-19 emergency and who were not provided an emergency allotment, or are receiving, have received, or will receive a smaller emergency allotment than Congress intended due to Defendants' improper interpretation of Section 2302(a)(1) of the FFCRA.

21.     The requirements of Federal Rules of Civil Procedure 23(a) and (b)(2) are met in that:

a.  The class is so numerous that joinder of all members is impracticable.  The ages and/or disabilities and low incomes of class members also make joinder impracticable.  The composition of the class changes on a daily basis due to individuals becoming newly eligible for SNAP;

b.  There are questions of law and fact common to the class, including whether Defendants' interpretation of Section 2302(a) violates the FFCRA and the APA. Defendants' improper limitation on the emergency allotment amount for which class members are eligible harms all class members;

c.  The claims of the representative parties are typical of the claims of the class members and the representative parties will fairly and adequately protect the interests of the class.  Moreover, Plaintiffs are represented by competent counsel

6

who have represented classes in numerous other cases involving SNAP and other

public benefits programs; and

d.  Defendants have acted on grounds generally applicable to the members of the

class, thereby making appropriate final injunctive and declaratory relief with

respect to the class as a whole.

**LEGAL AND STATUTORY FRAMEWORK**

*A.*   ***Congress Intended SNAP to Effectively Address Hunger***

22.  The Food Stamp Act of 1964, P.L. 88-525, authorized the Food Stamp Program,

which was renamed the Supplemental Nutrition Assistance Program (hereinafter "SNAP" or "the

program") with the passage of the Food and Nutrition Act of 2008.  SNAP was enacted to

promote the general welfare and to safeguard the health and well-being of the nation's

population by helping low-income households access nutrition and alleviate hunger and

malnutrition.  P.L. 110-246, §§ 4001-02.

23.  The Food and Nutrition Act of 2008 also institutionalized priorities that USDA's

Food and Nutrition Service ("FNS") had focused on for many years, including strengthening

integrity, simplifying administration, maintaining state flexibility, improving health through

nutrition education, and improving access.

24.  The program's stated purpose is to "promote the general welfare and to safeguard

the health and well-being of the Nation's population by raising the levels of nutrition among

low-income households." Food and Nutrition Act of 2008, 7 U.S.C. § 2011; 7 C.F.R. § 271.1(a).

25.  Understanding that "the limited food purchasing power of low-income households

contributes to hunger and malnutrition among members of such households," Congress enacted

SNAP to "permit low-income households to obtain a more nutritious diet through normal

channels of trade." 7 U.S.C. § 2011.  To achieve this goal, SNAP provides non-cash nutritional support for millions of low-wage working families, low-income seniors, and people with disabilities living on fixed incomes in the form of benefits redeemable for SNAP-eligible foods at SNAP-eligible retailers.

26.     The federal government funds 100% of SNAP benefits but jointly administers the program through the FNS with states and local governments.  States and localities in turn pay for approximately 50 percent of each state agency's operation of the SNAP program and administer SNAP benefits within the parameters set by the Food and Nutrition Act and USDA. *See, e.g.*, 7 U.S.C. § 2025(a); 7 U.S.C. § 2020(d)-(e); 7 C.F.R. §§ 272.1, 277.4.  The PA DHS administers SNAP benefits for the Commonwealth of Pennsylvania, and Pennsylvania residents can apply for a variety of programs offered by the PA DHS, including SNAP benefits.

27.     In order to receive SNAP benefits, individuals or households must first establish eligibility through an application process. 7 U.S.C. § 2014(a).  Each state designs its own SNAP application process following federal guidelines and requirements, but in most states households apply in person, by mail or fax, or online.  An eligibility interview is normally mandatory, although USDA is permitting states, including Pennsylvania, to waive the interview requirement during the pandemic.[1] 7 C.F.R. § 273.2(c), (e).  Applicants must document numerous aspects of their eligibility, including their identity, residency, immigration status, household composition, income and resources, and deductible expenses. 7 C.F.R. § 273.2(f).

---

[1] USDA Food and Nutrition Service, *SNAP – Adjusting Interview Requirements Due to Novel Coronavirus (COVID-19) – Blanket Approval* (June 3, 2020), https://www.fns.usda.gov/snap/adjusting-interview-requirements-covid-19-blanket-waiver.

28.     Applicant households that meet financial requirements are determined eligible and then receive dedicated funds that they can use to purchase food. 7 U.S.C. §§ 2014, 2017.  To be eligible for SNAP benefits, a household's net income generally must be below the federal poverty level ("FPL") (100% FPL), 7 U.S.C. § 2014(c)(1), and the household must meet other eligibility requirements set forth in the Food and Nutrition Act. 7 U.S.C. § 2011 *et seq.*  In federal Fiscal Year 2020 (October 1, 2019 – September 30, 2020), the net monthly income limit for an individual is $1,041, and $2,146 for a family of four.

## STATEMENT OF FACTS

**A.      *Pennsylvania Responds to the Global Pandemic and Submits its First Waiver Request in Response to COVID-19***

29.     COVID-19 has rapidly spread across the globe with cases reported in at least 199 countries.  Based on current understanding, COVID-19 is spread mainly through people who are in close contact with one another through respiratory droplets produced by an infected person.

30.     In response to COVID-19, the Secretary of Health and Human Services ("HHS") declared a public health emergency on January 31, 2020, retroactive to January 27, 2020, under Section 319 of the Public Health Service Act, 42 U.S.C. § 247d.

31.     The first presumptive positive cases of COVID-19 in Pennsylvania were noted on March 6, 2020.  On the same day, Pennsylvania Governor Tom Wolf signed a Proclamation of Disaster Emergency for the Commonwealth of Pennsylvania in response to the COVID-19 pandemic.

32.      Following the emergency proclamation, Pennsylvania began implementing measures to mitigate the spread of COVID-19, including the issuance of a "stay-at-home" order by Governor Wolf on April 1, 2020, directing individuals residing in the Commonwealth to stay

at home except as needed to access, support, or provide life-sustaining business, emergency, or government services.

33.     On March 13, 2020, the PA DHS submitted a waiver request to USDA requesting the ability to issue all SNAP households an additional, emergency SNAP allotment equal to 50 percent of the maximum SNAP allotment for their household sizes.

34.     Pennsylvania's waiver request cited the Centers for Disease Control and Prevention ("CDC") recommendation that all households maintain a two-week supply of food as a reason to provide an emergency allotment equivalent to two weeks of benefits at the maximum rate.  The PA DHS explained "many SNAP recipients are particularly vulnerable to COVID-19 based on age and disability, and . . . efforts at preventing community spread would be greatly enhanced if SNAP recipients are provided with a stocked food supply."

35.     The COVID-19 pandemic has thrown the United States into an unprecedented crisis with devastating consequences for public health and the economy, with more than 100,000 deaths in the United States.  Similar to other measures across the country, Pennsylvania's measures to slow the spread of COVID-19, including requirements that individuals must stay at home except for certain essential activities, have triggered an economic slowdown.  According to the U.S. Department of Labor, more than 38.6 million Americans have filed for unemployment, representing record highs.  According to Pennsylvania's Department of Labor and Industry, over 1.8 million[2] Pennsylvanians have filed for unemployment benefits.

---

[2] The Pennsylvania Department of Labor and Industry Office of Unemployment Compensation, *Unemployment Compensation Claim Statistics & COVID-19*, https://www.uc.pa.gov/COVID-19/Pages/UC-Claim-Statistics.aspx (last visited July 15, 2020).

36.     As of the time of filing, there is no specific antiviral treatment for COVID-19, nor is there a vaccine generally available to protect against COVID-19.  All sixty-seven counties in Pennsylvania have cases of COVID-19, amounting to a total of 97,655 total COVID-19 cases and 6,957 deaths in Pennsylvania as of July 15, 2020.[3]

### B.     The FFCRA Provides for Emergency Allotments to Address COVID-19 Emergency

37.     In response to the COVID-19 pandemic, on March 18, 2020 Congress passed the FFCRA. Pub. L. No. 116-127, 134 Stat.178 (Mar. 18, 2020).  The FFCRA is a sweeping piece of legislation that, among other measures, is intended to provide temporary new authority and broad flexibility for the USDA and states to adapt SNAP to alleviate hardships for individuals and families facing issues of food insecurity related to the COVID-19 crisis.  FFCRA § 2302.

38.     The purpose of the FFCRA SNAP provisions is to provide "emergency food assistance [] for seniors, women, children, and low-income families."  116 Cong. Rec. H1, 687 (Mar. 13, 2020) (statement of Rep. Granger).

39.     On March 18, 2020, President Trump reinforced his support for the FFCRA and stated that the intention of the FFCRA was "to support families and the most vulnerable" by providing "funding and flexibility for emergency nutritional aid for senior citizens, women, children, and low-income families." *See* Press Release, White House, President Donald J. Trump Is Supporting American Businesses, Workers, and Families Impacted by the Coronavirus (Mar. 18, 2020).

---

[3] The Pennsylvania Department of Health, *COVID-19 Data for Pennsylvania*, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited July 15, 2020).

40.     Section 2302(a)(1) of the FFCRA requires the Secretary of Agriculture to "provide, at the request of a State agency (as defined in section 3 of the Food and Nutrition Act of 2008) that provides sufficient data (as determined by the Secretary through guidance) supporting such request, for emergency allotments to households participating in the supplemental nutrition assistance program under the Food and Nutrition Act of 2008 to address temporary food needs not greater than the applicable maximum monthly allotment for the household size."

41.     This provision unambiguously requires the Secretary of Agriculture to provide "emergency allotments" to all households currently receiving SNAP benefits, upon appropriate state agency requests.  This provision requires the Secretary of Agriculture to provide each household currently receiving SNAP benefits an emergency benefit "to address temporary food needs" in an effort to strengthen SNAP benefits for all SNAP households amidst the COVID-19 public health emergency.

42.     Congress, in enacting Section 2302(a)(1), makes no reference to reducing the "emergency allotment" to which households currently receiving SNAP benefits are entitled by the ordinary allotment they already have received.

C.      **USDA's Guidance Unlawfully Restricts Emergency Allotments under the FFCRA**

43.     The FFCRA provided the USDA with temporary authority to work with states to issue additional emergency allotments of SNAP benefits based on the public health emergency declaration by the Secretary of HHS when a state has also issued an emergency or disaster declaration.

12

44.     In implementing the FFCRA provision on SNAP emergency allotments, USDA
published five guidance documents (collectively, "Guidance") that impose an illegal and
erroneous restriction on the amount of emergency allotments:  a State Guidance Memo
("Guidance Memo") dated March 20, 2020; a letter to states ("Letter") with the subject line
"Supplemental Nutrition Assistance Program (SNAP) – Denial of Certain Requests to Adjust
SNAP Regulations" dated April 10, 2020; a document titled "Supplemental Nutrition Assistance
Program – Questions and Answers, COVID-19, Set #1" ("SNAP COVID-19 Q&A") on April
11, 2020; an Updated State Guidance Memo ("Updated Guidance Memo") titled "USDA FNS
Month-to-Month Contingent Approval to Continue Issuing SNAP Emergency Allotments
Benefits under the FFCRA of 2020" on April 21, 2020; and a memorandum to states titled
"Reporting of Pandemic EBT and SNAP Emergency Allotments through the Food Program
Reporting System (FPRS) – Questions and Answers" on April 27, 2020 ("Reporting Q&A").

45.     In its SNAP COVID-19 Q&A, USDA improperly characterizes emergency
allotments as "supplements to a household's SNAP benefits" that "are added on to a household's
monthly benefit so the total household benefit amount may equal the maximum benefit for their
household size."

46.     In other words, USDA implemented a cap on SNAP food benefits by only
allowing emergency allotments to bring SNAP recipients up to the *preexisting* maximum
monthly allotment for their household sizes and declaring that "[h]ouseholds that already receive
the maximum benefit for their household size may not receive an additional emergency
allotment."

47.     USDA's interpretation is inconsistent with Section 2302(a)(1)'s instruction to
provide "emergency allotments to households participating in the supplemental nutrition

13

assistance program . . . to address temporary food needs not greater than the applicable

maximum monthly allotment for the household size." The phrase "not greater than the

applicable maximum monthly allotment for the household size" in the statute clearly relates to

the emergency allotments alone, not to the combination of the original, regular monthly

allotment and the emergency allotment.

48.     Under the USDA's incorrect interpretation of the statute, a household already

receiving the maximum allotment because of its extremely low income would receive nothing

due to the COVID-19 emergency, while a two-person household that normally receives the

minimum benefit of $16 per month because of its higher income, would receive an emergency

allotment of $339 (normal two-person maximum of $355 minus $16). SNAP households with

the lowest incomes or with no income at all receive no emergency allotments due to USDA's

improper benefit cap, while SNAP recipients with the highest incomes receive the largest

emergency allotments.

49.     USDA's Guidance turns the organizing principle of SNAP allotment amounts on

its head, providing no emergency allotments at all to the poorest SNAP families and the largest

emergency allotment amounts to SNAP families with the highest incomes. Congress cannot

have intended to prompt such a drastic departure from past policy and practice – and common

sense.

50.     To request the issuance of emergency allotments, USDA required state agencies

to complete a form included in the Guidance Memo, which stated, "[t]he State proposes to

provide emergency allotments to address temporary food needs to households to bring all

households up to the maximum benefit due to pandemic related economic conditions for up to

two months."

51.     Reducing "emergency allotments" by the size of "allotments" households receiving SNAP benefits already received is contrary to Congress's intent of enhancing the government's ability to protect "families' food security" during the COVID-19 public health emergency through "strengthened nutrition security initiatives, including SNAP … ." 116 Cong. Rec. H1, 688 (Mar. 13, 2020) (statement of Rep. Johnson).

52.     In response to USDA's arbitrary interpretation, on March 25, 2020 Governor Wolf wrote a letter to Defendants regarding emergency food assistance in the Commonwealth. Governor Wolf urged Defendants to reconsider USDA's interpretation of the FFCRA, since "the legislation authorizes USDA to provide an *additional* emergency allotment to all households, up to the maximum benefit for their household size." (emphasis in original).  Governor Wolf wrote, "We are deeply concerned that the poorest households, particularly those with very young children, would not be eligible to receive anything under [USDA's] … reading of the law."

### D.     *Pennsylvania Submits Its Second Waiver Request in Response to COVID-19*

53.     On March 30, 2020, Lisa M. Watson, Deputy Secretary for Income Maintenance, PA DHS, submitted a second waiver request using the form provided in the Guidance Memo along with a cover email explaining that the PA DHS disagreed with USDA's interpretation of the FFCRA that would cap the temporary emergency allotment to the difference between a household's normal monthly allotment and the maximum allotment amount for that household size established prior to the pandemic.

54.     On April 2, 2020, USDA approved the PA DHS's form waiver request, allowing the PA DHS to issue emergency allotments to bring all SNAP households up to the maximum allotment amount established prior to the pandemic, consistent with the USDA's interpretation of

the FFCRA.  On information and belief, USDA did not respond to the PA DHS's cover email

regarding USDA's improper interpretation of the FFCRA.

55.     On April 10, 2020, USDA issued a letter denying several types of waivers

requested by state SNAP agencies (the "Letter").  The FNS provided that pursuant to Section

2302 of the FFCRA, the Letter served as a mass denial by the FNS for certain state requests,

such as the PA DHS's original request, that would involve "[p]roviding emergency allotments

that exceed the maximum benefit for a household's size."  The Letter provided no citations or

legal reasoning to support the denial or USDA's interpretation.

56.     On April 11, 2020, USDA issued another guidance document, the SNAP COVID-

19 Q&A, which is a set of questions and answers for SNAP state agencies in response to

questions received about USDA's interpretation of the FFCRA.  The SNAP COVID-19 Q&A

reiterated the limitation on emergency allotments and provided the following rationale:

> The emergency allotments authorized under Sec. 2302 of the
> Families First Coronavirus Response Act (FFCRA) are
> supplements to a household's SNAP benefits, similar to
> supplements authorized during disasters under Sec. 5(h)(3)(A) of
> the Food and Nutrition Act of 2008 (FNA). These supplements
> address temporary food needs and are added on to a household's
> monthly benefit so the total household benefit amount may equal
> the maximum benefit amount for their household size. Households
> that already receive the maximum benefit for their household size
> may not receive an additional emergency allotment.

57.     USDA further reiterated its position on April 21, 2020, through the Updated

Guidance Memo, stating the following:

> A household's EA [emergency allotment] cannot increase the
> current monthly household SNAP benefit allotment beyond "the
> applicable maximum monthly allotment for the household size."
> Accordingly, SNAP households that already receive the maximum
> monthly allotment for their household size are not eligible for EA.

16

58.     For those states that already received approval to issue emergency allotments in March and April 2020, or April and May 2020, the Updated Guidance Memo provided approval to continue issuing emergency allotments each month until the Secretary of HHS rescinds the federal public health emergency declaration or the relevant state-issued disaster or emergency declaration expires.  Pennsylvania has issued emergency allotments for March, April, May, and June 2020, and will issue them for July 2020, and can reasonably be expected to do so for additional months.

59.     On April 27, 2020, Governor Wolf again wrote to USDA, reiterating his concern at USDA's interpretation of the FFCRA.[4]  He stated, "FNS' interpretation means families that received the maximum SNAP payment for their household size, about 40 percent of the cases in Pennsylvania, received no additional funding and, therefore, are unable to fill their pantries as recommended."  While expressing appreciation for USDA's approval of emergency allotments on an ongoing basis during the public health emergency, he concluded that "we do not think that this ensures all SNAP households have the resources they need to adequately social distance and weather economic challenges created by the public health crisis."

60.     On May 22, 2020, Plaintiffs' counsel sent a letter to Defendants USDA and Secretary Perdue requesting that USDA change the guidance it issued in March implementing Section 2302(a)(1) of the FFCRA.

61.     By email dated June 8, 2020, Defendants responded to Plaintiffs' counsel's letter, stating that USDA believes its determination "that States could provide Emergency Allotments

---

[4] Pennsylvania Governor Tom Wolf, *Letter to USDA* (Apr. 27, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/04/20200428-TWW-FNS-Reconsideration-Letter.pdf.

for the difference between a SNAP household's current allotment and maximum benefit" is

"consistent with Congressional intent."

E.     **USDA's Guidance Is Arbitrary and Capricious Because It Provides No Explanation for Its Decision to Declare Households Receiving Maximum SNAP Benefits Ineligible for "Emergency Allotments"**

62.    USDA asserts in conclusory fashion that "emergency allotments" authorized

under Section 2302 of the FFCRA "are supplements to a household's SNAP benefits, similar to

supplements authorized during disasters under Sec. 5(h)(3)(A) of the Food and Nutrition Act of

2008."  Section 5(h)(3)(A) of the FNA, however, ***does not*** authorize "supplements."  Rather,

Section 5(h)(3)(A) of the FNA authorizes "emergency allotments."  7 U.S.C. § 2014(h)(3)(A).

63.    The FNA recognizes that disasters are emergencies that can destroy food and

"disrupt[] commercial channels of food distribution," rendering regular SNAP allotments

inadequate and causing "temporary food needs" that require provision of "temporary food

assistance" to eligible households.  7 U.S.C. § 2014(h)(1).  Section 5(h)(3)(A), therefore,

requires the Secretary of Agriculture to provide "emergency allotments" to households in

disaster areas to replace any food destroyed in the disaster.  *Id.* § 2014(h)(3)(A).

64.    The COVID-19 public health emergency has occasioned impacts on commercial

channels of food distribution, and concomitant food needs, similar to those occasioned by the

disasters contemplated under Section 5(h)(3)(A) of the FNA.  Tellingly, in April 2020 the price

of groceries grew 2.6% in one month, the biggest increase from one month to the next since 1974

according to the Bureau of Labor Statistics.  *See* Consumer Price Index for All Urban Consumers

(CPI-U): U.S. city average, by expenditure category, 1-month analysis table.  The price of

groceries has continued to grow.

65.     Neither the FNA, nor its implementing regulations, even suggest that the "emergency allotments" authorized under Section 5(h)(3)(A) to address "temporary food needs" occasioned by natural disasters are limited to the difference between a SNAP household's regular monthly allotment and the maximum monthly allotment for the household's size, as USDA's Guidance concludes.  Under Section 5(h)(3)(A) of the FNA, SNAP households receiving maximum monthly benefits are entitled to an "emergency allotment" equal to the value of food destroyed in disaster, up to an *additional* maximum monthly allotment, separate from and not reduced by the value of their regular SNAP benefits.  *Id.* § 2014(h)(3)(A); 7 C.F.R. § 280.1.

66.     "Supplements," on the other hand, are benefits fundamentally different than "emergency allotments" authorized under the FNA.  USDA provides "supplements" as part of the Disaster Supplemental Nutrition Assistance Program ("D-SNAP"), which USDA administers under its Robert T. Stafford Act authority, *not* its FNA authority.

67.     D-SNAP provides one month of emergency benefits, in the form of allotments "equal to the maximum monthly allotment," to households "who may not normally qualify for or participate in SNAP" but live in a disaster area for which the President declares Major Disaster Individual Assistance.[5]

68.     Under D-SNAP, SNAP households receive two forms of emergency benefits.

69.     *First*, D-SNAP recognizes that all SNAP households are entitled to "replacement benefits" to replace "food purchased with their benefits" that is destroyed in the disaster.[6]

---

[5] U.S. Dep't of Agric., Food & Nutrition Serv., Supplemental Nutrition Assistance Program (SNAP): Disaster SNAP Guidance 4-5 (July 2014)
[6] *Id.* at 37.

Households receiving maximum SNAP benefits are eligible to receive a replacement benefit equal to the maximum benefit (i.e., a replacement for the maximum SNAP benefit).

70.     **Second**, D-SNAP authorizes payment of "supplements" to SNAP households. "Supplements" are payments made to SNAP households living in disaster areas **in addition to** replacement benefits in order to bring those households up to the maximum monthly benefit "in order [to] provide parity between new D-SNAP households" and existing SNAP households during the month D-SNAP households receive the maximum monthly allotment.[7]

71.     Despite invoking Section 5(h)(3)(A) of the FNA, the Guidance does not acknowledge that Section 5(h)(3)(A) authorizes "emergency allotments" to be provided to SNAP beneficiaries **in addition** to their usual allotment in order to replace the value of food destroyed by disaster, with the emergency allotments not to exceed "the applicable maximum monthly allotment for the household size."  7 U.S.C. § 2014(h)(3)(A); 7 C.F.R. § 280.1.  Moreover, despite concluding that "emergency allotments" under Section 2302(a)(1) of the FFCRA are similar to "supplements" purportedly authorized under Section 5(h)(3)(A) of the FNA, the Guidance does not recognize that USDA authorizes "supplements" pursuant to its Stafford Act authority, **not** its FNA authority.

72.     USDA's Guidance interpreting "emergency allotments" as "supplements" unavailable to households receiving maximum monthly SNAP benefits, instead of as "emergency allotments" authorized under Section 5(h)(3)(A) of the FNA and available to recipients of maximum monthly SNAP benefits requires explanation the Guidance does not provide.

---

[7] *Id.* at 35.

**F.**      ***USDA's Guidance Fails to Consider an Important Aspect of the Problem Congress Sought to Address in Section 2302(a) of the FFCRA and Is Therefore Arbitrary and Capricious***

73.      The purpose of SNAP is to raise "levels of nutrition among low-income households."  7 U.S.C. § 2011.

74.      Congress included Section 2302(a) of the FFCRA within the SNAP statutory scheme.  Therefore, in issuing guidance regarding Section 2302(a) of the FFCRA, USDA was obligated to consider that an important aspect of the problem Section 2302(a) of the FFCRA seeks to address is raising the "levels of nutrition among low-income households" amidst the COVID-19 public health emergency.

75.      USDA's Guidance interpreting "emergency allotments" authorized under Section 2302(a) of the FFCRA denies emergency subsistence benefits to the lowest income households, while providing emergency subsistence benefits to households with relatively higher incomes.

76.      Given the economic exigencies of the ongoing COVID-19 public health emergency, USDA's Guidance interpreting "emergency allotments" authorized under Section 2302(a) effectively ***decreases*** the level of nutrition among the lowest income households while ***increasing*** the level of nutrition for households with relatively higher incomes.  Yet there is no indication in the Guidance that USDA considered this issue, much less considered how this issue relates to the problem of raising the "levels of nutrition among low-income households" amidst the COVID-19 public health emergency Congress sought to address in Section 2302 of the FFCRA.

77.      USDA's failure to consider an important part of the problem Congress sought to address through Section 2302 of the FFCRA renders the portion of its Guidance interpreting "emergency allotments" arbitrary and capricious.

**G.**     ***The Guidance's Limitation on Emergency Allotments Contravenes Congress's Unambiguously Expressed Intent in Section 2302(a)(1) of the FFCRA and Is Therefore Invalid***

78.     The maximum SNAP allotment is based on normal circumstances, not exceptional circumstances as during this unprecedented global pandemic.  Congress recognized this by providing for additional emergency allotments, on top of the available SNAP allotment. Had Congress intended to replace the normal SNAP benefit calculation with a determination that each household should instead receive the maximum allotment amount, it could have done so.

79.     Other parts of Section 2302 alter SNAP operations in response to the crisis.  *See* 2302(a)(2) (allowing for the adjustment of "issuance methods and application and reporting requirements").

80.     Congress instructed the Secretary of Agriculture to provide "emergency allotments" to all households receiving SNAP benefits.  The only limit Congress placed on the value of those "emergency allotments" was that the "emergency allotments" could not exceed the "maximum monthly allotment for the household size."

81.     Congress's intent in so instructing the Secretary of Agriculture was unambiguous. Each household participating in SNAP is to receive an "emergency" payment ***in addition to*** its regular payment during the COVID-19 emergency.  This emergency payment cannot be more than the "maximum monthly allotment for the household size."  FFCRA § 2302(a)(1).

82.     Congress did not intend to provide no additional benefits to families with the highest likelihood of food insecurity and hunger during the COVID-19 pandemic.  And it clearly did not limit the statutory language to exclude these families.  Indeed, many families receiving the maximum SNAP allotment include elderly or disabled household members, who are at a heightened risk for developing serious complications from COVID-19, which can cause severe

22

and life-threatening respiratory illness marked by fever, coughing, and difficulty breathing.  *See* Centers for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19) Frequently Asked Questions (last updated May 12, 2020).

83.     These families with the least income are least likely to have existing stores of food and the most likely to rely on emergency food assistance sites, such as food banks, to make up the gap in food needs.

84.      To further complicate things, many food assistance sites have closed due to the danger of congregate food distribution or are open at reduced capacity in response to recommendations by infectious-disease and public health experts that have advised everyone to stay home as much as possible to minimize the spread of the virus.  *See* Centers for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19):  How to Protect Yourself and Others (internet) (updated Apr. 24, 2020).

85.     While social distancing is necessary to help limit the spread of the virus, many of these families need transportation assistance or rely on public transportation, which is now limited, to travel to and from grocery stores or to food assistance sites.  These aggregating factors and logistical challenges make it even more difficult for vulnerable populations to venture out to emergency food assistance sites.

86.     The statutory scheme of which Section 2302 of the FFCRA is now a part confirms Congress's unambiguous intent.

87.     Section 2302 of the FFCRA is part of the SNAP statutory scheme.  Since its inception in 1964, SNAP has operated on the principle that households with the lowest net incomes should receive the largest allotments, the monthly amount of benefits an applicant is authorized to receive during each month, as they have the least income of their own with which

to purchase food.  7 U.S.C. § 2012(b).  The unprecedented health and economic effects of

COVID-19 and widespread social disruptions to limit its spread have made it even more difficult

for many low-income households to access and afford food.  Even under normal circumstances,

monthly SNAP allotments are often insufficient to purchase all of the food families need.  Under

the SNAP benefit formula, families with no income or very low incomes receive an allotment

equal to the cost of the Thrifty Food Plan for their household size, which constitutes the

maximum SNAP allotment.  The federal government sets the guidelines for SNAP allotments

based on household size, setting the minimum and maximum across all states in the contiguous

United States and the District of Columbia. 7 U.S.C. § 2014(b); 7 C.F.R. § 273.10(e)(4)(i).

SNAP is designed to provide the highest monthly benefit amounts to the lowest-income and no-

income recipients who need the most assistance purchasing food.  In Fiscal Year 2018, 37% of

SNAP households nationally received the maximum benefit amount.  As a direct result of

USDA's interpretation, many Pennsylvania residents did not receive relief to address temporary

food needs caused by the COVID-19 public health emergency, amounting to 674,462 people in

March and 728,118 people in April who were denied emergency allotments to which they are

entitled under the FFCRA.

88.     Based on the statutory scheme established by the Food and Nutrition Act of 2008,

very poor households should receive larger benefits than those households that are closer to the

maximum income threshold for SNAP eligibility, based on the determination that they need

more help affording an adequate diet.

89.     Under this established scheme, families at higher income levels receive the

maximum allotment reduced by 30% of their net incomes, on the assumption that they will spend

30% of their net incomes on food.  7 U.S.C. § 2017(a); 7 C.F.R. § 273.10(e)(2)(ii)(A).  Currently

the maximum monthly allotment for a single individual is $194 per month, whereas eligible households with one or two members with higher incomes qualify for at least a "minimum benefit" of $16.

90.     However, USDA's Guidance regarding the FFCRA departs from previously established standards by providing the same overall benefit to every household, regardless of income.

91.     Congress did not find that SNAP recipients with the highest incomes are experiencing emergency needs due to COVID-19 that the poorest SNAP families are not also experiencing.   Likewise, USDA has not articulated any rationale for assuming that COVID-19 has caused SNAP recipients with the highest incomes to experience emergency needs that the poorest SNAP families are not also experiencing.

### H.    *Plaintiffs Will Suffer Irreparable Harm Based on USDA's Guidance*

92.     Plaintiffs currently are suffering and will continue to suffer harm if USDA maintains its arbitrary interpretation of "emergency allotments" under Section 2302(a)(1) the FFCRA as reflected in the March 20 and April 21, 2020 guidance.  Plaintiffs have no adequate remedy at law.

93.     Plaintiff Latoya Gilliam has limited income to purchase food for herself and her young son.  Ms. Gilliam was scheduled to start employment on April 1, 2020; however, due to COVID-19, her start date was delayed.

94.     Ms. Gilliam supports her family, which includes herself and her two-year-old son, on $316 per month from the Temporary Assistance for Needy Assistance program and her monthly allotment of $355 in SNAP benefits, the maximum SNAP benefits for her household of two people.

25

95.     Due to the economic exigencies of the COVID-19 public health emergency, Ms.

Gilliam's regular SNAP benefits are insufficient to meet her household's food needs.  Ms.

Gilliam attempted to fill the nutrition gap for her family through a visit to a local food pantry;

however, they only had snacks available.  Ms. Gilliam is unable to ensure her family can

maintain good health and consume a nutritious diet due to limited finances and resources.

96.     As a current SNAP recipient, Ms. Gilliam is entitled to emergency SNAP

allotments under the FFCRA.  However, due to USDA's arbitrary choice to interpret "emergency

allotments" under Section 2302 of the FFCRA as "supplements" instead of "emergency

allotments," Ms. Gilliam is not receiving any additional benefits.

97.     Plaintiff Kayla McCrobie has no income other than her monthly allotment of $194

in SNAP benefits, the maximum amount for her household size of one.  Ms. McCrobie relies on

local food banks and grocery stores that accept SNAP to fulfill her nutritional needs.

98.     Due to the economic exigencies of the COVID-19 public health emergency, Ms.

McCrobie's regular SNAP benefits are insufficient to meet her household's food needs.  The

local food pantry that Ms. McCrobie previously used to supplement her nutritional needs is no

longer able to acquire the fresh produce, milk, eggs and ground beef from many of the

organizations that typically donate large volumes of food, such as local restaurants that have had

to shut down due to the pandemic.

99.     Ms. McCrobie is also unable to fulfill her food needs from her regular sources, as

the local farmers' markets with competitive prices are now closed.  In an effort to limit her

exposure to COVID-19, Ms. McCrobie does not travel to grocery stores that require the use of

public transportation and must instead shop at a local store with higher prices.  As a result, Ms.

McCrobie struggles with hunger.  Ms. McCrobie is forced to skip meals and is unable to fulfill

her nutritional needs.  Ms. McCrobie feels the adverse health effects of her food insecurity,

including fatigue, weakness and lower iron levels.

100.    As a current SNAP recipient, Ms. McCrobie is entitled to emergency SNAP

allotments under the FFCRA.  However, due to USDA's arbitrary decision to interpret

"emergency allotments" under Section 2302 of the FFCRA as "supplements" instead of

"emergency allotments," Ms. McCrobie is not receiving any additional benefits.

### CLAIMS FOR RELIEF

### COUNT I
*(ACTION IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE
ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706)*

101.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of

the preceding paragraphs of this Complaint.

102.    The APA requires courts to "hold unlawful and set aside" agency action that is

"arbitrary," "capricious," or an "abuse of discretion." 5 U.S.C. § 706(2)(A).

103.    The portions of the Guidance interpreting "emergency allotments" as

"supplements" purportedly authorized under Section 5(h)(3)(A) of the FNA are arbitrary,

capricious, and an abuse of discretion because the USDA does not adequately explain its

decision to illogically interpret "emergency allotments" as "supplements" – not authorized under

Section 5(h)(3)(A) of the FNA, but instead authorized under the Stafford Act – unavailable to the

poorest SNAP recipients during an emergency, instead of as "emergency allotments" authorized

under Section 5(h)(3)(A) of the FNA available to the poorest SNAP recipients during an

emergency.

104.    The portions of the Guidance interpreting "emergency allotments" as

"supplements" unavailable to the poorest SNAP recipients also are arbitrary, capricious, and an

abuse of discretion because those portions of the Guidance do not address that the problem before USDA was raising the "levels of nutrition among low-income households" amidst the COVID-19 public health emergency and the Guidance effectively **decreases** the level of nutrition among the lowest income SNAP households, while providing emergency subsistence benefits to households to SNAP households with relatively higher incomes.

## COUNT II
### (ACTION NOT IN ACCORDANCE WITH LAW IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706)

105.    Plaintiffs re-allege and incorporate herein by reference every allegation and paragraph set forth previously.

106.    Under the APA, 5 U.S.C. §§ 701-706, courts must overturn agency action that is "not in accordance with law," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

107.    USDA is an "agency" under the APA. 5 U.S.C. § 551(1).

108.    Portions of the Guidance interpreting "emergency allotments" as "supplements" conflict with the language of the FFCRA and Congress's clear intent by limiting the permissible maximum amount of emergency allotments, barring households already receiving the maximum amount from receiving any emergency allotment at all, and limiting households already receiving close to the maximum allotment to minimal emergency allotments.

109.    Plaintiffs were and are being harmed by those portions of the Guidance in that they received no emergency allotments or smaller emergency allotments than they were entitled to under the statute and were and are therefore less able to meet their households' emergency food needs.

110.    By issuing those portions of the Guidance against the express statutory language and intent of Congress, Defendants have acted contrary to law and in excess of statutory jurisdiction and authority.

## PRAYER FOR RELIEF

111.    Declare that USDA's Guidance is an action not in accordance with law and an arbitrary and capricious action, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706, to the extent that it limits emergency allotments authorized by the FFCRA to the difference between SNAP recipients' normal allotment amounts and the maximum benefit for their household sizes;

112.    Invalidate the portions of USDA's Guidance barring emergency allotments that bring SNAP recipients' total monthly benefit amounts, adding together the emergency allotment and the regular monthly allotment, above the regular maximum monthly allotment;

113.    Declare that emergency allotments must be based on data supplied by the Commonwealth of temporary food needs, as the FFCRA requires;

114.    Preliminarily and permanently enjoin Defendants from limiting approval of the Commonwealth's requests for emergency allotments to the difference between SNAP recipients' normal allotment amount and the maximum benefit for their household size;

115.    Award to Plaintiffs their costs of litigation including, but not limited to, reasonable attorneys' fees, under 28 U.S.C. § 2412, and any other applicable law; and

116.    Order such other and further relief as this Court deems just and appropriate.

Dated:  July 16, 2020

Respectfully submitted,

*s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr. (PA I.D. No. 54279)
Kenneth M. Kulak  (PA I.D. No. 75509)
Timothy J. Geverd (PA I.D. No. 324802)
(*application for admission forthcoming*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5000
Facsimile: (215) 963-5001
John.Lavelle@morganlewis.com
Kenneth.Kulak@morganlewis.com
Timothy.Geverd@morganlewis.com


Jonelle Saunders (*application for pro hac vice
admission forthcoming*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Telephone:  (202) 739-3000
Facsimile: (202) 739-3001
Jonelle.Saunders@morganlewis.com


*s/ Louise Hayes*
Louise Hayes (PA I.D. No. 78581)
Amy Hirsch (PA I. D. No. 42724)
**COMMUNITY LEGAL SERVICES OF
PHILADELPHIA**
1410 W. Erie Avenue
Philadelphia, PA 19140
Telephone: (215) 227-2400
Facsimile: (215) 227-2435
LHayes@clsphila.org
AHirsch@clsphila.org

Elizabeth Soltan (PA I.D. No. 327510) (*admission pending*)
**COMMUNITY LEGAL SERVICES OF PHILADELPHIA**
1424 Chestnut Street
Philadelphia, PA  19102
Telephone:  (215) 981-3700
Facsimile:  (267) 765-6481
ESoltan@clsphila.org

*Attorneys for Plaintiffs*