UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Latoya Gilliam and Kayla McCrobie, individually and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**United States Department of Agriculture and George Ervin Perdue III, in his official capacity as Secretary of the United States Department of Agriculture,**<br><br>Defendants. | Case No. 20-cv-3504 |

**MOTION FOR CLARIFICATION AND A
STAY OF THE PRELIMINARY INJUNCTION**

On September 11, 2020, the Court issued a preliminary injunction prohibiting the U.S. Department of Agriculture ("USDA") from applying USDA's reading of section 2302 of the Families First Coronavirus Response Act ("FFCRA") when processing any new emergency allotment application from the Commonwealth of Pennsylvania. *See* PI Order, at 1. Last week, Pennsylvania submitted an application to USDA seeking not only emergency allotments for coming months, but also enhanced, *retroactive* emergency allotments for prior months based on Plaintiffs' reading of section 2302.

In no way could this Court's PI Order be interpreted to provide the retroactive amounts that Pennsylvania is seeking—amounts that Pennsylvania has still not sought through any lawsuit of its own. As a threshold matter, this type of retroactive relief is not permitted under the Administrative Procedure Act ("APA"), the statute under which Plaintiffs brought suit. The APA permits only prospective relief; it does not allow for compensatory damages. Here, Pennsylvania

1

seeks retroactive emergency allotments as compensation for USDA's prior refusal to provide these allotments when requested; thus, an award of retroactive emergency allotments would function as compensatory damages, and are thus not allowed under the APA. Additionally, in its PI response brief, USDA explicitly objected to any retroactive relief, and Plaintiffs did not address this issue in either their reply brief, or at oral argument. They have thus waived their right to now insist upon retroactive relief. Further, Pennsylvania's erroneous reading of the Court's injunction would require USDA to provide Pennsylvania nearly *$411 million* in additional benefits, further depleting the limited resources available for emergency allotments.

USDA therefore respectfully requests that this Court clarify that its injunction only requires USDA to provide prospective emergency allotments to Pennsylvania consistent with Plaintiffs' reading of section 2302; it does not require USDA to provide Pennsylvania with retroactive emergency allotments for prior months—a form of relief that Plaintiffs never requested, let alone justified, as part of this litigation.

Additionally, in light of the significant monetary burden the Court's preliminary injunction would impose upon USDA—possibly to the detriment of other SNAP-beneficiaries—USDA respectfully requests that the Court stay its preliminary injunction pending appeal. This harm, which is already severe, would be compounded by a decision denying USDA's motion for clarification.

## Background

Section 2302 of the FFCRA states that, if certain conditions are satisfied, then "at the request of a state agency," USDA "shall provide . . . for emergency allotments to households participating in [SNAP] . . . to address temporary food needs not greater than the applicable maximum monthly allotment for the household size." Pub. L. No. 116-127, § 2302(a), 134 Stat.

178, 188 (Mar. 18, 2020). USDA interpreted this provision consistent with its long-standing practice concerning disaster relief benefits, and thus announced that it would only issue emergency allotments in an amount sufficient to bring an eligible household's aggregate SNAP benefits up to the statutory maximum for its household size. *See* Emergency Allotments Guidance, USDA Food and Nutrition Service, https://fns-prod.azureedge.net/sites/default/files /resource-files/SNAP-COVID-EmergencyAllotmentsGuidance.pdf, at 2 (Mar. 20, 2020).

Plaintiffs—SNAP-eligible families in Pennsylvania—brought suit, and sought a preliminary injunction preventing USDA from "interpreting 'emergency allotments' authorized under Section 2302 of the FFCRA as 'supplements,' limited in value to the difference between the regular monthly benefit SNAP households receive and the maximum monthly benefit for a given household's size." *See* PI Motion, ECF No. 4-2, at 2-3. Defendants opposed the preliminary injunction motion, arguing, among other things, that Plaintiffs' reading of section 2302 would rapidly deplete available emergency allotment funds, ultimately to the detriment of all SNAP-eligible families. *See* PI Response, ECF No. 11, at 19-20. The Court nevertheless granted Plaintiffs' preliminary injunction motion, concluding that to the extent available funds run low, Congress will presumably step in and allocate additional funding. *See Gilliam v. USDA*, 20-cv-3504, ECF No. 33, at 7 n.3 (E.D. Pa. Sept. 11, 2020). The Court thus issued a preliminary injunction, stating:

> To the extent that [Pennsylvania] submits requests, in accordance with Section 2302(a)(1) of the [FFCRA] for emergency allotments, supported by sufficient data (as determined by the Secretary through guidance) . . . :
>
> (a) Defendants are PRELIMINARILY ENJOINED from implementing, or denying such requested emergency allotments based upon, their unlawful guidance provisions, most recently updated as of April 21, 2020, stating that "[a] household's [emergency allotment] cannot increase the current monthly

>household SNAP benefit allotment beyond 'the applicable maximum monthly allotment for the household size[,]' and that SNAP households that already receive the maximum monthly allotment for their household size are not eligible for [emergency allotments]"; and
>
>(b) Defendants SHALL approve or deny such requests in accordance with the statutory directive of Section 2302(a)(1) as construed by this Court in the Memorandum issued concurrently herewith.

*Id.* at 39.

USDA has now distributed all of the funds Congress allocated for the FFCRA emergency allotments,[1] and despite Plaintiffs' insistence that Congress would indeed provide additional funding, the only legislation that Congress has since enacted fails to earmark *any* funding specifically for emergency allotments. *See* Continuing Appropriations Act, 2021 and Other Extensions Act, H.R. 8337, 116th Cong. (Sept. 22, 2020) (enacted) (hereinafter, the "Continuing Resolution"). This bill only extends baseline, pre-pandemic SNAP funding, sufficient to maintain the standard level of SNAP monthly allotments. *Id.* Because USDA's general appropriation for fiscal year 2020 had been spent, USDA was funding further emergency allotments through a contingency fund that is usually reserved for general disaster relief and to support program operation during a government shutdown. *See* Shahin Decl. ¶¶ 8-9. With the enactment of the Continuing Resolution, USDA will now fund the emergency allotments through the new baseline SNAP appropriations—funds which are intended to support standard SNAP benefits for all participating families in all States. *See* Shahin Decl. ¶ 16.

---

[1] As noted in Defendants' preliminary injunction response memorandum, Congress did not allocate any funding for these emergency allotments in the FFCRA, but rather allocated the relevant funding—around $15 billion—in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. *See* PI Response, at 5-6.

On September 22, 2020, Pennsylvania submitted an emergency allotment application seeking not only emergency allotments for future months, but also additional, retroactive allotments in an amount equal to the difference between what Pennsylvania already received for those months and what Pennsylvania would have received under Plaintiffs' reading of section 2302. *See* Shahin Decl. ¶¶ 12-13. Based on USDA's internal estimates, fulfilling the latter component of Pennsylvania's request would cost USDA an additional $411 million. *See* Shahin Decl. ¶ 13.

## Argument

**I. The Court should clarify that its September 11, 2020 preliminary injunction does not require USDA to provide Pennsylvania retroactive emergency allotments for prior months.**

When issuing an injunction, a court must "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." F.R.C.P. 65(d)(1). "This language strongly suggests that prohibited conduct will not be implied from such orders; that they are binding only to the extent they contain sufficient description of the prohibited or mandated acts." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971).[2] Thus, "ambiguities and omissions in [these] orders redound to the benefit of the" parties subject to them. *Id.* When there is a dispute over the terms of an injunction which implicates "Rule 65(d)'s specificity requirements, the proper remedy is clarification." *United States v. Fifty Below Sales & Mktg., Inc.*, No. CIV. 06-1112 ADM/LIB, 2012 WL 1150865, at *2 (D. Minn. Apr. 6, 2012).

Here, the September 11, 2020 preliminary injunction prevents USDA from "denying . . . . [Pennsylvania's] requested emergency allotments" based upon USDA's position that "[a] household's [emergency allotment] cannot increase the current monthly household SNAP benefit

---

[2] Internal quotation marks are omitted throughout this memorandum, unless otherwise indicated.

5

allotment beyond 'the applicable maximum monthly allotment for the household size," PI Order, at 39, but it does not specify whether this applies both prospectively and retroactively. The Court should now clarify that its preliminary injunction only requires USDA to provide prospective emergency allotments to Pennsylvania consistent with Plaintiffs' reading of section 2302, but does not require USDA to provide Pennsylvania with any retroactive emergency allotments in an amount equal to the difference between what Pennsylvania has already received for prior months and what it would have received under Plaintiffs' reading of section 2302.

First, although the APA permits prospective relief, it specifically excludes claims for "money damages," 5 U.S.C. § 702, a term which "normally refers to a sum of money used as compensatory relief" and "given to the plaintiff to substitute for a suffered loss," *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999). Here, with respect to Pennsylvania's request for retroactive benefits, Pennsylvania is contending that certain SNAP beneficiaries should have received enhanced emergency allotments in prior months, and thus seek additional emergency allotments now as compensation—the type of backwards-focused request that has been held to be a claim for damages.[3] *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 319 (3d Cir. 2013) ("[R]etroactive relief" in the form "of equitable relief" may be the "functional[] equivalent to damage awards.").

---

[3] Plaintiffs will likely argue that, in seeking retroactive emergency allotments, they are not seeking compensatory "damages," but rather seek injunctive relief to "give the plaintiff[s] the very thing to which [they are] entitled." *Blue Fox, Inc.*, 525 U.S. at 262. But USDA cannot provide "the very thing to which" Plaintiffs claim they are "entitled." Plaintiffs are arguing that they were entitled to have USDA approve Pennsylvania's initial emergency allotment application *when that application was submitted in March 2020*, whereby Plaintiffs would have received enhanced SNAP benefits starting in or around March 2020. Since those months have now passed, however, USDA cannot issue emergency allotments in each month from March 2020 to the present. The most USDA can now provide is compensatory relief for those prior months, and thus any request for retroactive benefits would constitute a request for "damages."

6

Second, if there were any doubt about the remedy sought and ordered in this case, it would be resolved by reference to the course of litigation that preceded the order. USDA expressly objected to retroactive emergency allotment payments in its PI response brief, and Plaintiffs did not address this argument in their reply brief or at oral argument. In the PI response brief, Defendants specifically noted: "[A]ny relief ordered should be prospective . . . [r]etroactive relief here for benefits that Plaintiffs claimed should have been paid could, in itself, sap most or all of the remaining funds allocated for the emergency allotments." PI Response, at 21. Plaintiffs did not address this point in their reply, and at oral argument, when the Court asked what "winning [would] look like to" Plaintiffs, Plaintiffs again failed to mention retroactivity. PI Arg. Tr., at 54:14-15. Plaintiffs cannot belatedly object to this argument now. *See*, *e.g.*, *Love v. Johnson*, No. CIV.A.2:07-01045, 2010 WL 2178951, at *7 (D.N.J. May 27, 2010) ("Plaintiffs' brief appears to make no specific response to [Defendant's] argument. Failure to respond constitutes abandonment or waiver . . . ."); *Pers. Audio, LLC v. Google LLC*, No. CV 17-1751-CFC-CJB, 2019 WL 2403086, at *2 (D. Del. June 7, 2019) ("[Plaintiff] did not respond to [certain] arguments . . . in [Plaintiff's] reply brief . . . or during the . . . hearing," and so the "Court thus considers them waived"), report and recommendation adopted sub nom. *Pers. Audio, LLC v. Google, Inc.*, No. CV 17-1751-CFC-CJB, 2020 WL 58631 (D. Del. Jan. 6, 2020). Pennsylvania is of course free to file its own lawsuit on this point (which it has failed to do for the past five months), but it cannot seek to rewrite this Court's order through Plaintiffs here.

Third, Pennsylvania's request for retroactive emergency allotment payments would cost USDA an additional *$411 million* even though USDA has run out of funds appropriated by the CARES Act for the FFCRA emergency allotments. *See supra* at 5. And although both Plaintiffs and the Court opined that Congress may potentially intervene and provide additional emergency

7

allotment funding, there is no indication that they will do so in the near term. Indeed, the Continuing Resolution recently enacted by Congress does not earmark *any* additional funding for FFCRA emergency allotments. *See supra* at 4. Instead, it only continues the baseline level of funding for SNAP benefits. *See id.* Thus, USDA would have to finance any retroactive emergency allotment payments to Pennsylvania out of this appropriation, which is intended for standard SNAP benefits for all participating families. Reading the Court's injunction to authorize retroactive emergency allotments to Pennsylvania could therefore consume funds that would otherwise go to SNAP-eligible households in other States.

**II.     The Court should stay its September 11, 2020 preliminary injunction in whole or in part.**

In determining whether to stay an injunction pending appeal, the Court must consider "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). "[A] sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning . . . the likelihood of winning on appeal need not be more likely than not." *Id.* The Court need not conclude that USDA is correct about its reading of section 2302, but rather only that USDA has a "reasonable probability of success on the merits." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). Now that Pennsylvania has filed its application for funds, and the resulting detrimental impact on USDA's operations its clear, a stay is warranted to permit appellate review.

Here, all four factors favor a stay of the preliminary injunction pending appeal. First, USDA can establish a "reasonable chance" of prevailing on appeal. At least one other court has

8

already concluded that USDA is likely to prevail on its position that section 2302 only requires USDA to provide emergency allotments in an amount sufficient to bring a SNAP eligible household's aggregate SNAP benefits up to the statutory maximum. *See Hall v. U.S. Dep't of Agric.*, No. 20-CV-03454-HSG, 2020 WL 3268539 (N.D. Cal. June 17, 2020). The court reasoned, in part, that section 2302 "does not explicitly raise [the statutory] maximum," nor "does it alter the 'thrifty food plan' on which this statutory maximum is based" which "is assumed by definition to constitute the total cost needed to feed a household for a month." *Id.* at *6. The Court here, however, rejected this argument, concluding that Congress may have failed to expressly lift the statutory cap because it did not want to allow SNAP beneficiaries to receive SNAP benefits in excess of the cap on a permanent basis. *See* PI Order, at 30. But Congress could have expressly lifted the cap on a temporary basis, or otherwise made clear that it believed the thrifty-food plan was insufficient to cover a family's dietary needs during the COVID-19 pandemic. It did neither.

Further, the court in *Hall* also found that USDA's reading of section 2302 is likely correct because Congress allocated funds sufficient to support the emergency allotments for roughly six months based on USDA's reading of section 2302. *See* 2020 WL 3268539, at *7. As noted in USDA's PI Response, Congress explicitly requested a cost-estimate from USDA for financing the FFCRA emergency allotments, and USDA provided an estimate based on its reading of section 2302. *See* PI Response, at 6; Burr Decl. ¶ 12. The Court rejected this argument because, in its view, there is no indication that this cost estimate was viewed by Congress at large. *See* PI Order, at 9 n.5 But it is unclear why USDA must produce evidence indicating that a majority of Congresspersons had actual knowledge of this cost estimate (and USDA's reading of section 2302). Given that Congress *requested* this information, and ultimately allocated funds sufficient to fund emergency allotments for six months consistent with this information, the Court should

9

presume that Congress at large *did* rely on this data unless *Plaintiffs* present evidence suggesting otherwise. Regardless, USDA publicized its interpretation of section 2302 shortly after the FFCRA was enacted. *See* PI Response, at 5. Thus, the Court can presume that Congress, at minimum, was aware of USDA's reading of section 2302, and Congress's failure to disavow this reading in the CARES Act—implicitly or explicitly—is evidence of Congressional approval. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009) ("Congress is presumed to be aware of an administrative . . . interpretation of a statute," and courts may not assume that Congress disagrees with that interpretation "absent a clear expression . . . of [Congressional] intent.").

Furthermore, as explained in USDA's PI Response, multiple other indicia confirm that USDA's reading of section 2302 is consistent with congressional intent. For example, USDA interprets a similar provision (with similar language)—7 U.S.C. § 2014(h)(1)—to allow for emergency relief only in an amount sufficient to bring a SNAP eligible family's aggregate benefits up to the statutory cap.[4] *See* PI Response, at 12-13. Thus, Congress could anticipate that using similar language in section 2302 would invite a similar interpretation from USDA, and yet Congress did not expressly permit SNAP families to receive benefits in excess of the cap, further confirming USDA's reading of section 2302. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When administrative" regulations "have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate" its settled "interpretations as well."); *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978) (When "Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law" and to

---

[4] For example, section 2014(h)(1) provides for "*temporary food assistance*" for "households who are victims of a disaster," while section 2302 provides benefits for "temporary food needs" in light of the COVID-19 pandemic. *See* PI Response, at 12-13.

"adopt that interpretation" in the new law.). In its PI Order, the Court rejected this argument since, in section 2302, Congress did not duplicate all of the material language from USDA's D-SNAP Program, which was formed pursuant to section 2014(h)(1). *See* PI Order, at 30-32. But the question is whether section 2302 invokes the relevant language from *section 2014(h)(1)*, rather than the programs developed under it, and there is no dispute that this provision contains language similar to section 2302.

But even if the Court finds that the aforementioned factors are not conclusive evidence of Congressional intent, they are nonetheless stronger than any factors supporting Plaintiffs' reading of section 2302. Plaintiffs, and the Court, rely largely on the argument that section 2302 does not expressly limit emergency allotments to an amount sufficient to bring a household's aggregate SNAP benefits within the statutory maximum. But section 2302 does not expressly support Plaintiffs' reading either; contrary to the Court's conclusion, section 2302 never indicates that USDA "shall" issue "emergency allotments" to *all* SNAP-eligible households. Additionally, as noted *supra*, the statutory structure does clearly support USDA's reading, given Congress's failure to expressly lift the statutory maximum. Accordingly, USDA has a reasonable chance of prevailing on appeal.

The remaining factors support a stay as well. To start, the second and fourth factors—harm to the stay applicant and to the public interest—"merge" since the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors favor a stay here since Plaintiffs' request for enhanced emergency allotments would accelerate the consumption of a limited pool of USDA resources for SNAP benefits, potentially to the detriment of other SNAP-eligible families. Although the immediate financial burden imposed by the court's preliminary injunction was not initially clear, it is crystal clear now that Pennsylvania has requested approximately $471 million—

to start—in federal funds to benefit its citizens in a manner disproportionate to the benefits received by citizens in every other state. *See* Shahin Decl. ¶ 13.

As noted above, the relevant CARES Act funds have already been spent, and Congress has not earmarked any additional funding specifically for FFCRA emergency allotments. Instead, in the Continuing Resolution, Congress simply continued baseline SNAP funding at the pre-pandemic fiscal year 2020 level ($57 billion for the whole fiscal year). *See* Shahin Decl. ¶ 16. USDA must therefore fund any further emergency allotments—including those for Pennsylvania—out of this appropriation, which must also cover standard SNAP allotments for all participating families. Based on USDA's calculation, Pennsylvania's request for emergency allotments consistent with Plaintiffs' reading of section 2302 will consume an additional *$60 million* per month. *See* Shahin Decl. ¶¶ 13-14. Even if USDA can finance these allotments in the short term without depleting the entire Continuing Resolution appropriation, this expenditure would nonetheless accelerate the use of these funds, virtually ensuring a budgetary shortfall in the future absent congressional intervention—which, again, has not been forthcoming. Such a shortfall would result in reduced benefits for all SNAP-eligible households—Plaintiffs included. *See* PI Response, at 19-20.

The risk of harm is especially acute if other courts follow this Court's lead, and allow SNAP beneficiaries in other States to similarly collect enhanced SNAP benefits. If USDA had to provide emergency allotments consistent with Plaintiffs' reading of section 2302 to *all* SNAP-eligible families, USDA could potentially face costs up *$48 billion* in costs for the period of October-December 2020 alone. *See* Shahin Decl. ¶ 18. This would deplete, over the course of three months, nearly 70% of the appropriation intended for all SNAP-eligible families for the entire fiscal year. *See supra* at 12. And even if it is currently uncertain whether other States will similarly

seek enhanced emergency allotments, the Third Circuit has made clear that when assessing the "public interest" factor, a Court must consider not only the actual, immediate effects of its specific decision, but the broader ramifications to the public if the Court's legal conclusions and relief were to apply universally. *See*, *e.g.*, *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (finding emergency relief appropriate to prevent a former employee from joining a competitor and sharing proprietary information from his former employer since "there is a generalized public interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements."); *HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 175 (3d Cir. 2015) (finding that the public interest factor is satisfied since "the public at large can be expected to gain from the enforcement of non-competes . . ..).

Further, the third factor—potential harm to the opposing party—likewise counsels in favor of a stay. Although Plaintiffs would not receive enhanced SNAP benefits, they will still receive the statutory maximum, just like SNAP-eligible families in every other State. And in Congress's view, SNAP benefits equal to the statutory maximum should be sufficient to cover a family's dietary needs. *See supra* at 9.

## Conclusion

Accordingly, the Court should clarify that the Court's September 11, 2020 preliminary injunction applies only on a prospective basis and does not require USDA to provide retroactive emergency allotments for prior months. Additionally, the Court should stay its preliminary injunction in full pending appeal. USDA will issue emergency allotments to Pennsylvania today, commensurate to those provided to every other State, while the scope of the preliminary injunction remains unclear and USDA seeks a stay of that order. In the interest of expediency, Defendants will waive their right to a reply brief.

Dated: October 2, 2020

                                    Respectfully submitted,

                                    JEFFREY BOSSERT CLARK
                                    Acting Assistant Attorney General

                                    JOHN R. GRIFFITHS
                                    Branch Director, Federal Programs Branch

                                    */s/* Kuntal Cholera
                                    KUNTAL V. CHOLERA
                                    Trial Attorney
                                    U.S. Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L Street, NW
                                    Washington, D.C. 20005
                                    kuntal.cholera@usdoj.gov

                                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

*/s/* Kuntal Cholera

Kuntal V. Cholera
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

Attorney for Defendants