**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **LATOYA GILLIAM** and **KAYLA McCROBIE**, individually and on behalf of all others similarly situated, | : : : : : : |  |
| Plaintiffs, | : : | Case No. 2:20-cv-03504-JMY |
| v. | : : : |  |
| **UNITED STATES DEPARTMENT OF AGRICULTURE** and **GEORGE ERVIN PERDUE III**, in his official capacity as Secretary of the United States Department of Agriculture, | : : : : : : : |  |
| Defendants. | : : |  |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
CLARIFICATION AND A STAY OF THE PRELIMINARY INJUNCTION**

October 16, 2020

John P. Lavelle, Jr. (PA I.D. No. 54279)
Kenneth M. Kulak (PA I.D. No. 75509)
Timothy J. Geverd (PA I.D. No. 324802)
Adina D. Bingham (PA I.D. No. 89860)
Caitlin McKenna (PA I.D. No. 309397)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
john.lavelle@morganlewis.com
ken.kulak@morganlewis.com
timothy.geverd@morganlewis.com
adina.bingham@morganlewis.com
caitlin.mckenna@morganlewis.com

Louise Hayes (PA I.D. No. 78581)
Amy Hirsch (PA I.D. No. 42724)
**COMMUNITY LEGAL SERVICES OF
PHILADELPHIA**
1410 W. Erie Avenue
Philadelphia, PA  19140
Tel: (215) 227-2400
Fax: (215) 227-2435
LHayes@clsphila.org
AHirsch@clsphila.org

Elizabeth Soltan (PA I.D. No. 327510)
**COMMUNITY LEGAL SERVICES OF
PHILADELPHIA**
1424 Chestnut Street
Philadelphia, PA 19102
Tel: (215) 981-3700
Fax: (267) 765-6481
ESoltan@clsphila.org

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT .................................................................................................... 3

    A.   Defendants Have Refused To Follow This Court's Preliminary Injunction
          Order ....................................................................................................... 3

    B.   Defendants' Motion is Procedurally Deficient ...................................... 6

    C.   Defendants' Motion for Clarification Fails on its Merits ...................... 9

          1.   The Court Already Considered, Decided, and Rejected
                Defendants' Arguments ........................................................... 9

          2.   The APA Permits Retroactive Benefits and Defendants Have No
                Basis to Argue Otherwise ...................................................... 12

          3.   SNAP Expressly Provides for Retroactive Benefits .............. 13

          4.   Defendants' Past and Present Practices Provide for Retroactive
                Benefits .................................................................................. 15

    D.   Defendants Are Not Entitled to a Stay Pending Appeal ..................... 17

          1.   In the Absence of an Appeal, An Order Cannot be Stayed Pending
                Appeal .................................................................................... 17

          2.   Even If Defendants Had Filed an Appeal, A Stay Pending Appeal
                Would Not be Appropriate ...................................................... 18

                 a.   Defendants Cannot Show a Likelihood of Success on the
                      Merits ......................................................................... 19

                 b.   Defendants Have Failed to Demonstrate They Will Be
                      Irreparably Injured Absent a Stay ............................... 20

                 c.   Issuance of the Stay Will Cause Harm to Other Interested
                      Parties ......................................................................... 21

                 d.   Public Interest Weighs Against Issuing a Stay of the
                      Preliminary Injunction Order ...................................... 22

III.  CONCLUSION ............................................................................................... 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988)........................................................................................12

*Brown v. Certain Underwriters at Lloyds*,
   777 F. App'x 34 (3d Cir. 2019) .....................................................................13

*Catlin Specialty Ins. Co. v. J.J. White, Inc.*,
   387 F. Supp. 3d 583 (E.D. Pa. 2019) .............................................................7

*Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Hum.
Servs.*,
   No. 13-11, 2013 WL 11277419 (3d Cir. Feb. 8, 2013) .........................................18

*Contractors Ass'n v. City of Phila.*,
   739 F. Supp. 227 (E.D. Pa. 1990) ...............................................................21

*Gilliam v. U.S. Dep't of Agric.*,
   --- F. Supp. 3d ----, 2020 WL 5501220 (E.D. Pa. Sept. 11, 2020) .................................. *passim*

*Greenberg v. Scholastic, Inc.*,
   No. 16-6353, 2018 U.S. Dist. LEXIS 203048 (E.D. Pa. Nov. 30, 2018) .............................6, 7

*Guidiville Rancheria of Cal. v. United States*,
   No. 12-cv-1326 YGR, 2014 WL 5020036 (N.D. Cal. Oct. 2, 2014).....................................17

*Hall v. U.S. Dep't of Agric.*,
   No. 20-CV-03454-HSG, 2020 WL 3268539 (N.D. Cal. June 17, 2020)...............................19

*Kathleen S. v. Dep't of Pub. Welfare*,
   10 F. Supp. 2d 476 (E.D. Pa. 1998) .......................................................18, 19, 22

*Lynch v. Lyng*,
   872 F.2d 718 (6th Cir. 1989) .....................................................................14

*Mallory v. S&S Publishers*,
   No. 14-5702, 2017 WL 4475960 (E.D. Pa. July 6, 2017) .......................................10

*Resolution Trust Corp. v. KPMG Peat Marwick*,
   No. 92-cv-1373, 1993 WL 211555 (E.D. Pa. June 8, 1993).......................................6

*In re Revel, AC, Inc.*,
   802 F.3d 558 (3d Cir. 2015).......................................................................17

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

*Robinson v. Block*,
    869 F.2d 202 (3d Cir. 1989) ........................................................................................... 14

*Singer Management Consultants, Inc. v. Milgram*,
    650 F.3d 223 (3d Cir. 2011) ........................................................................................... 17

*Victory v. Berks Cty.*,
    No. 18-5170, 2019 WL 2368579 (E.D. Pa. June 3, 2019) ............................................. 18

*Zellous v. Broadhead Assocs.*,
    906 F.2d 94 (3d Cir. 1990) ............................................................................................. 12

**Statutes**

7 U.S.C. § 2011 *et seq.* .......................................................................................................... 13

7 U.S.C. § 2023(b) ................................................................................................................. 14

42 U.S.C. § 1988 .................................................................................................................... 17

**Rules**

7 CFR § 273. 17(a)(2) ............................................................................................................ 14

Fed. R. Bankr. P. 8007 ........................................................................................................... 17

Fed. R. Civ. P. 62(d) ......................................................................................................... 17, 18

Fed. R. Civ. P. 65(d)(1) ........................................................................................................... 7

Local Rule 7.1(g) ..................................................................................................................... 6

**Other Authorities**

FFCRA § 2302(a)(1) ...................................................................................................... *passim*

## I.     INTRODUCTION

Defendants the United States Department of Agriculture ("USDA") and USDA Secretary George Ervin Perdue III refuse to comply with this Court's September 11, 2020 Order (Dkt. 33) granting Plaintiffs' motion for preliminary injunction (the "Preliminary Injunction Order"). *Gilliam v. U.S. Dep't of Agric.*, --- F. Supp. 3d ----, 2020 WL 5501220 (E.D. Pa. Sept. 11, 2020). In its Preliminary Injunction Order, this Court enjoined Defendants from implementing, or denying Pennsylvania FFCRA emergency allotments based upon, USDA's own unlawful guidance provisions and ordered Defendants to "approve or deny such requests in accordance with the statutory directive of Section 2302(a)(1) as construed by this Court in the Memorandum issued concurrently herewith."  *Id.* at *19.

Defendants have defied this Court's Preliminary Injunction Order:  They have not approved or denied emergency allotments "in accordance with the statutory directive of Section 2302(a)(1) as construed by this Court in the Memorandum," despite Pennsylvania's application for such allotments immediately after entry of this Court's Order.  Instead, Defendants continue to handle Pennsylvania's emergency allotment requests exactly as they did before the Preliminary Injunction Order was entered, and as they handle every other state's emergency allotment requests—*i.e.*, unlawfully.

Defendants have no justification for their actions.  They simply offer excuses in the form of this untimely and meritless Motion for "Clarification" and Stay, which (1) seeks reconsideration of the Court's Preliminary Injunction Order without offering a change in the law, new evidence, or clear error in need of correction; (2) argues for a new and unfounded legal bar for retroactive benefits; and (3) seeks a stay of the Court's Order pending an appeal they have not filed.  While Defendants have failed to properly respond to Pennsylvania's FFCRA emergency allotment requests pursuant to the Court's Order, Plaintiffs unfairly continue to

experience the very irreparable harms this Court found resulted from Defendants' unlawful actions.  The Court must compel Defendants to comply with the Court's Preliminary Injunction Order and deny their Motion for "Clarification" and Stay.  Such relief is proper for the following reasons:

- ***First***, Defendants have clearly violated the Court's unambiguous Preliminary Injunction Order, without justification.  They have no authority to "abstain" from the actions mandated by the Court.  By their conduct, they unnecessarily extend the irreparable harm already inflicted on Plaintiffs to date.

- ***Second***, Defendants' Motion is procedurally deficient.  Styled as a Motion for "Clarification," Defendants' Motion is actually an untimely motion for reconsideration that should be procedurally barred.  Even if timely, the Motion fails to identify a single event that would trigger reconsideration of an unambiguous order without need for clarification.

- ***Third***, Defendants' arguments fail on their merits because (1) the Preliminary Injunction Order issues clear relief based on the arguments the parties' presented to the Court, including requiring review of requests made by the Commonwealth after the date of the Preliminary Injunction Order in accordance with the terms of the Preliminary Injunction Order, even if part of the benefits to be issued pursuant to those requests are for prior months; (2) Defendants have no basis to argue that Plaintiffs are not entitled to retroactive benefits as a matter of law; and (3) in any event, the law and the procedures consistently followed by the USDA in approving state allotment requests permit retroactive benefits.  Even if Defendants somehow prevail on these merits, Defendants

must still assess allotment requests for prospective payments pursuant to the Preliminary Injunction Order, which they have failed to do.

- *Fourth*, Defendants request a stay pending an appeal they have not filed and, even if filed, Defendants fail to establish a basis for such relief.

## II.    ARGUMENT

### A.    Defendants Have Refused To Follow This Court's Preliminary Injunction Order

Defendants have violated and refuse to follow the Court's Preliminary Injunction Order. Plain and simple.

A brief timeline of the sequence of events displays Defendants' egregious disobedience.

On September 11, 2020, the Court entered its Preliminary Injunction Order, which states that:

> To the extent that the Department of Human Services of the Commonwealth of Pennsylvania submits requests, in accordance with Section 2302(a)(1) of the Families First Coronavirus Response Act ("Section 2302(a)(1)"), for emergency allotments, supported by sufficient data (as determined by the Secretary through guidance), to address the temporary food needs of Pennsylvania households participating in the supplemental nutrition assistance program under the Food and Nutrition Act of 2008:

> Defendants are **PRELIMINARILY ENJOINED** from implementing, or denying such requested emergency allotments based upon, their unlawful guidance provisions, most recently updated as of April 21, 2020…; and

> Defendants **SHALL** approve or deny such requests in accordance with the statutory directive of Section 2302(a)(1) as construed by this Court in the Memorandum issued concurrently herewith.

*Gilliam*, 2020 WL 5501220, at *19 (emphasis in original). The Court issued this Order "to avoid irreparable harm to the named Plaintiffs and the proposed putative class in this action—'all persons living in Pennsylvania who are, were or will be eligible for SNAP benefits during the period for which Congress has authorized the issuance of emergency allotments during the COVID-19 emergency and who were not provided an emergency allotment[.]'" *Id.* at *18. Pursuant to the Order, USDA was prohibited from relying on its unlawful guidance to approve or

deny **any** new Pennsylvania application to issue emergency allotments that is supported by sufficient data according to the Court's reading of the FFCRA, which allows for those beneficiaries already receiving maximum benefits under SNAP to receive emergency allotments.

On September 22, 2020, Pennsylvania Department of Human Services ("DHS") submitted a waiver request to FNS seeking emergency allotments for the period of March 2020 through October 2020 equal to 50 percent of the maximum allotment for SNAP households that had not previously received emergency allotments.  Declaration of Teresa D. Miller ("Miller Decl.") ¶¶ 4-5.  Pursuant to the April 21, 2020 FNS guidance, FNS responded and requested the estimated costs and number of households that would receive the emergency allotment.  *Id.* ¶ 6. DHS provided that additional information the same day.  *Id.*  Subsequently, FNS requested additional information regarding financial reporting periods, which inquiries were answered.  *Id.* ¶¶ 7-8.  On September 30, 2020, DHS submitted a waiver request to FNS seeking emergency allotments for the period of March 2020 through October 2020 for SNAP households that had previously received emergency allotments in an amount less than 50% of their monthly SNAP allotment.  *Id.* ¶ 9.  USDA has not requested additional supporting data for this request, or even acknowledged its receipt.  On October 2, 2020, USDA responded:

> FNS authorizes disbursement of emergency allotments to Pennsylvania for October **in an amount consistent with its protocol for all other States**.  FNS is currently seeking a clarification of the preliminary injunction and a stay from the Eastern District of Pennsylvania regarding Pennsylvania's additional request for (1) retroactive emergency allotments from March to September and (2) emergency allotments for October at 50% of the maximum monthly allotment for households already receiving the maximum monthly allotment for their household size.  **FNS will abstain from approving those additional requested allotments** until disposition of its pending motion for clarification of the preliminary injunction and resolution of its efforts to obtain a stay of the district court's order.

*Id.*, Ex. E (emphasis added).

4

Notably, in failing to provide either prospective or retroactive benefits approval, USDA did not—because it could not—assert any failure to provide the sufficient data required under the Court's Order. *See id.* ¶ 11 ("DHS provided all data required and requested"). Rather, USDA acted "consistent with its protocol for all other States" and "abstain[ed] from approving" the benefits mandated by the Court's Preliminary Injunction Order for the stated reason that Defendants are seeking "clarification" and a stay of that Order. They refuse to comply with the Order, unilaterally "abstaining" from approval. In effect, Defendants "implement[ed]," and "den[ied]" Pennsylvania's emergency allotment requests that post-date the Court's Order, based upon "their unlawful guidance provisions" and not "in accordance with" the Court's Order. As a result of USDA's failure to follow the terms of this Court's Preliminary Injunction Order, Pennsylvania is unable to provide emergency allotments anticipated as a result of the Preliminary Injunction Order. *Id.*

Defendants concede that the Court's Preliminary Injunction Order applies to emergency allotment requests for present and future benefits and therefore requires that USDA approve or deny Pennsylvania's September 22 and September 30 applications, fully supported by sufficient data, to issue emergency allotments in accordance with the Court's construction of Section 2302, at a minimum, for prospective benefits. Defendants' professed confusion as to whether the Court's directive applies to new requests from Pennsylvania that cover earlier time periods—as it clearly does—could at most affect only USDA's adjudication of Pennsylvania's September 22 and September 30 applications to the extent they request retroactive benefits. The Court's Preliminary Injunction Order has not been stayed and, indeed, Defendants have not yet even appealed that Order. Nevertheless, USDA has adjudicated Pennsylvania's September 22 and September 30 requests "commensurate" with "every other State's" applications—*i.e.*, in

accordance with its unlawful guidance—in open defiance of this Court's valid Preliminary

Injunction Order. Defs.' Mot., Dkt. 37, at 13 ("USDA will issue emergency allotments to

Pennsylvania . . . commensurate to those provided to every other State[] while the scope of the

preliminary injunction remains unclear and USDA seeks a stay of that order.").

Defendants have improperly disregarded the critical nature of relief mandated by the

Preliminary Injunction Order, the authority of this Court, and the established process to

challenge the Court's Order. Such conduct should not be tolerated. Plaintiffs ask that the Court

order (again) that Defendants immediately comply with the Preliminary Injunction Order.

### B.     Defendants' Motion is Procedurally Deficient

Defendants' Motion for "Clarification" is, in actuality, an untimely motion for

reconsideration. Pursuant to Local Rule 7.1(g), any motion for reconsideration should have been

filed by September 25, 2020, fourteen days after entry of the Preliminary Injunction Order.

Instead, Defendants waited until October 2, 2020—a full week later—to file a motion seeking

reconsideration, styled as a request for "clarification." Defendants' choice of caption for its

Motion does not determine its characterization; the relief sought governs this consideration.

*Greenberg v. Scholastic, Inc.*, No. 16-6353, 2018 U.S. Dist. LEXIS 203048, at *2 (E.D. Pa. Nov.

30, 2018) ("'[A] motion for clarification is not defined by the nomenclature used by the movant,'

rather, depending on the nature of the movant's request, a motion for clarification may be

characterized as 'as [a motion] to alter or amend.'") (citations omitted). And here, Defendants,

without a doubt, seek reconsideration and amendment of the Court's Preliminary Injunction

Order.

"The general purpose of a motion for clarification is to explain or clarify something

ambiguous or vague, not to alter or amend." *Resolution Trust Corp. v. KPMG Peat Marwick*,

No. 92-cv-1373, 1993 WL 211555, at *1-2 (E.D. Pa. June 8, 1993) (treating a motion for

clarification that sought to "modify this court's previous Orders and not simply clarify them" as a motion for reconsideration). A motion is properly characterized as one to alter or amend when a party "seeks to have the court modify its opinion." *Greenberg*, 2018 U.S. Dist. LEXIS 203048, at *2 (citations omitted).

On a motion for reconsideration, "[i]t is improper to ask the court to rethink what it has already thought through—rightly or wrongly." *Id*. (citations omitted). A motion for reconsideration must rely upon one of the following grounds: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Catlin Specialty Ins. Co. v. J.J. White, Inc.*, 387 F. Supp. 3d 583, 588 (E.D. Pa. 2019). As such, "[r]econsideration is an extraordinary remedy that is to be granted very sparingly." *Greenberg*, 2018 U.S. Dist. LEXIS 203048, at *3 (citations omitted).

Here, Defendants seek to "clarify" whether the Preliminary Injunction Order mandates that, when Pennsylvania submits a new emergency allotment request and all conditions precedent have been met, Defendants must grant "retroactive" benefits to SNAP families living in Pennsylvania. *See* Defs.' Mot. at 2. The Preliminary Injunction Order is clear on this point— the answer is yes. The Court's Order addresses any new emergency allotment request submitted by Pennsylvania in order to specifically "avoid irreparable harm to . . . 'all persons living in Pennsylvania who **are, were or will be** eligible for SNAP benefits during the period for which Congress has authorized the issuance of emergency allotments . . . .'" *Gilliam*, 2020 WL 5501220, at *18 (emphasis added). If retroactive emergency allotments were not contemplated, the Court would have had no need to specify payments to families who "were" eligible for SNAP benefits before issuance of its Order. Defendants suggest that Fed. R. Civ. P. 65(d)(1) requires

that the Court clarify its Order to further describe "in reasonable detail" the acts restrained or required.  Defs.' Mot. at 5.  But the Court itself specifically acknowledged this need and complied with it by providing all necessary detail to fully understand the acts restrained and required.  *See Gilliam*, 2020 WL 5501220, at *18.  Defendants have failed to identify any need for clarification.

Defendants also have failed to make the required substantive showing to support their untimely motion for reconsideration.  They have not identified a change in law, new evidence unavailable at the time of the original decision, or the need to correct a clear error of law or fact to prevent manifest injustice.  Instead, they make the same funding argument that was fully briefed by both parties and which was considered, and ultimately rejected, by the Court.  They only submitted an additional declaration restating the same unsuccessful arguments made previously.  *See* Section II.C.1, *infra*.  The APA, FFCRA, and CARES Act remain the operable law and have not been amended or modified by Congress since the Court entered the Preliminary Injunction Order.  USDA cites no case decided after the Order was issued to suggest different interpretation of the laws.  Pennsylvania's SNAP requests that post-date the Preliminary Injunction Order mirror its prior requests and are completely consistent with the Court's Order.

Even if clarification or reconsideration concerning retroactive benefits were necessary here—they are not—the application for such relief does not relieve Defendants of their obligations to comply with the Court's Preliminary Injunction Order.  Defendants have inexcusably failed to comply with the Court's Order even as to current benefits, again evaluating Pennsylvania's applications post-dating the Preliminary Injunction Order under its unlawful interpretation—as specifically prohibited by the Court.

### C.      Defendants' Motion for Clarification Fails on its Merits

Setting aside the procedural defects in Defendants' Motion, each and every substantive argument they attempt to make fails on the merits.  They attempt to rehash previously unsuccessful arguments, assert meritless legal theories, and disregard the law and the procedures consistently followed by USDA in approving state allotment requests.  Even if Defendants somehow prevail on their arguments seeking to restrict the Court's Preliminary Injunction Order from applying to retroactive FFCRA benefits, the Court's Order mandating payments of prospective benefits remains in full force and effect.

#### 1.      The Court Already Considered, Decided, and Rejected Defendants' Arguments

Defendants argue that reconsideration of the Court's Preliminary Injunction Order is warranted because "retroactive payments would cost USDA an additional *$411 million*" and could "consume funds that would otherwise go to SNAP-eligible households in other States" because "USDA has run out of funds appropriated by the CARES Act for the FFCRA emergency allotments."  Defs.' Mot. at 7-8 (emphasis in original).  In support of this argument, Defendants submit another declaration from Associate Administrator for SNAP, Jessica Shahin, explaining "the harms that would result if USDA was forced to disregard its interpretation of FFCRA and implementing guidance in Pennsylvania."  Shahin Reconsideration Decl., Dkt. 37-1, ¶ 6.  This declaration, however, merely reasserts the same evidence Defendants previously submitted to the Court, from the same declarant, in unsuccessful opposition to Plaintiffs' motion for preliminary injunction.

In response to Plaintiffs' motion for preliminary injunction, Defendants argued that paying retroactive benefits according to Plaintiffs' interpretation would "sap most or all of the remaining funds for the emergency allotments."  Defs.' Opp., Dkt. 11, at 21.  In support of this

argument, Defendants pointed to a declaration from Associate Administrator Shahin, which

asserted that "[r]etroactive emergency allotment payments" at the maximum monthly benefit

would "cost about $39.5 billion dollars; . . . increase potential expenses by over 50%; . . . trigger

the benefit reduction provisions of Section 18 of the FNA . . . ; and . . . cause an immediate Anti-

Deficiency Act violation because there are no reserves to pay for these costs."  Shahin Opp.

Decl., Dkt. 11-1, ¶ 15.

       The new Shahin declaration Defendants submitted in support of their belated motion for

reconsideration reasserts largely identical information regarding the cost and consequences of

paying retroactive emergency allotments.  Specifically, Shahin now asserts that paying

retroactive emergency allotments would "cost about $51 billion from March to September,"

"would increase potential SNAP expenses by over 50%," and "could trigger the benefit reduction

provisions of Section 18 of the FNA . . . ."  Shahin Reconsideration Decl. ¶ 18.  This is not new

evidence.  It is the **same** evidence Defendants submitted in support of their opposition to

Plaintiffs' motion for preliminary injunction with an updated cost estimate.[1]  *Compare* Shahin

Opp. Decl. ¶ 15.  "[R]ehash[ing] issues and evidence" which Defendants "previously discussed

in their original . . . response" to Plaintiffs' motion for preliminary injunction does not "provide

an adequate legal basis for granting their reconsideration motion."  *Mallory v. S&S Publishers*,

No. 14-5702, 2017 WL 4475960, at *1 n.1 (E.D. Pa. July 6, 2017) (second alteration in original)

(citations omitted).  Moreover, USDA's cost calculations, in both their original opposition and in

their reconsideration attempt are based upon the assumption that all 50 states make requests

similar to Pennsylvania's requests, or even larger requests.  The Preliminary Injunction Order,

---

[1] While the Shahin Reconsideration Declaration does not explain the updated estimate, it
presumably accounts for the additional time that has passed since Defendants filed their
opposition to Plaintiffs' motion for preliminary injunction.

however, only governs applications made by Pennsylvania.  *Gilliam*, 2020 WL 5501220 at *18

("the Court finds it appropriate to grant preliminary injunctive relief limited to Pennsylvania

SNAP households . . . .").  Notably, neither Defendants' Motion nor the Declaration in support

thereof identifies any other state that has made an application similar to that made by

Pennsylvania.

 The only thing that has changed since the Court's Preliminary Injunction Order is that

Congress passed a continuing resolution "that funds SNAP at the FY 2020 level," but did not

"provide an increase in funds available for the year."  Shahin Reconsideration Decl. ¶¶ 16-17.

Defendants therefore raise the specter that, "at some point over FY 2021," USDA "will have to

implement the benefit reduction provision in the FNA . . . without Congressional intervention."

*Id.* ¶ 16.  This, however, is not "new evidence" that is any different than the evidence that was

before the Court when it granted Plaintiffs' motion for preliminary injunction.  *See* Shahin Opp.

Decl. ¶ 15 ("Retroactive emergency allotments" would "trigger the benefit reduction provisions

of Section 18 of the FNA . . . .").

 In granting Plaintiffs' motion for preliminary injunction, the Court was well aware of

Defendants' concerns regarding the potential for Plaintiffs' requested relief to trigger the benefit

reduction provisions of Section 18 of the FNA.  The Court, however, found "no evidence that the

requested relief w[ould], in fact, bankrupt the available SNAP appropriations, lead to an across-

the-board reduction in allotments, or otherwise harm all SNAP households."  *Gilliam*, 2020 WL

5501220, at *16.  To the contrary, the Court found that the evidence before it "indicate[d] that

Congress has never failed to provide additional appropriations to meet the needs of the SNAP

program when requested by USDA."  *Id.*  Defendants' evidence submitted in support of their

Motion for "Clarification" does not alter the balance of the evidence that was before the Court in

granting Plaintiffs' motion for preliminary injunction.  Indeed, conspicuously absent from
Defendants' Motion is any evidence that USDA has alerted Congress of its continued
"anticipated need" to potentially "reduce allotments" such that Congress "may appropriate
additional funds as needed," as required under the SNAP statutory scheme.  *See id.* at *3.
Defendants should not be heard to plead funds are not available to fulfill the legal obligations
created by FFCRA, and recognized by this Court in the Preliminary Injunction Order, when
Defendants have not made any effort to secure the necessary funds.  Thus, Defendants' professed
continued concerns regarding the adequacy of funds to comply with the Court's Preliminary
Injunction Order is the product of their own continued inaction in defiance of the Court's Order.
And Defendants' inaction in the face of this Court's Order is not a cognizable basis for the Court
to reconsider that Order.

> ### 2.    The APA Permits Retroactive Benefits and Defendants Have No Basis to Argue Otherwise

In their Motion, Defendants assert two meritless theories.  First, Defendants claim the
APA does not permit awards of retroactive relief.  It does.  Second, Defendants assert that
Plaintiffs waived their entitlement to retroactive relief.  They have not.

The Supreme Court has "long recognized the distinction between an action at law or for
damages—which are intended to provide a victim with monetary compensation for an injury . . .
—and an equitable action for specific relief—which may include an order providing . . . for the
recovery of specific property or *monies* . . . ."  *Bowen v. Massachusetts*, 487 U.S. 879, 893
(1988) (emphasis in original) (citation omitted).  Where, as here, the monies sought are "funds to
which a statute allegedly entitles" Plaintiffs, Plaintiffs seek "specific remedies" not "money
damages."  *Zellous v. Broadhead Assocs.*, 906 F.2d 94, 97-98 (3d Cir. 1990) (citing *Bowen*, 487
U.S. at 895).  Thus, retroactive benefits are available under the APA, and Defendants did not

argue otherwise in their preliminary injunction briefing or at oral argument.  In the underlying briefing, Defendants merely opposed retroactive benefits based upon availability of funds to pay them, not based upon the availability of such a remedy under the APA.  Defs.' Opp. at 21. Defendants' funds availability argument was considered and rejected by the Court.  To the extent Defendants would now like to argue that retroactive benefits are not available under the APA here or on a (yet-to-be-filed) appeal, those arguments fail.  *See* Defs.' Mot. at 6.

Defendants would have the Court believe that Plaintiffs, not Defendants, waived their rights concerning retroactive benefits, but the facts belie this argument.  *Id.* at 7.  Defendants suggest that Plaintiffs waived their ability to seek retroactive benefits under the APA by virtue of not having addressed that argument previously.  *Id.*  Plaintiffs, however, cannot have waived a right that they did not know was being disputed.  "Waiver . . . is the intentional relinquishment or abandonment of a known right."  *Brown v. Certain Underwriters at Lloyds*, 777 F. App'x 34, 36 (3d Cir. 2019) (citations omitted) (alteration in original).  Because Defendants never asserted the argument that retroactive benefits would be unavailable under the APA—an argument that, as discussed *infra*, flies in the face of both law and practice regarding the availability of retroactive benefits—it is unreasonable to conclude Plaintiffs knowingly and voluntarily waived their ability to respond to the argument, which is being made now for the first time.  If any party waived this argument, it is Defendants.  A debate over such waiver is hardly relevant where, as stated above, the legal merits of the argument are plainly deficient.

### 3.      SNAP Expressly Provides for Retroactive Benefits

Defendants' suggestion that retroactive benefits should not be available to Plaintiffs is directly contrary to the law creating the SNAP program, 7 U.S.C. § 2011 *et seq.*, and the regulations in support thereof.  SNAP expressly provides for retroactive benefits such as those sought by Pennsylvania in its September 22, 2020 and September 30, 2020 requests:

13

> In any judicial action arising under this chapter, any allotments found to have been wrongfully withheld shall be restored only for periods of not more than one year prior to the date of the commencement of such action, or in the case of an action seeking review of a final State agency determination, not more than one year prior to the date of the filing of a request with the State for the restoration of such allotments or, in either case, not more than one year prior to the date the State agency is notified or otherwise discovers the possible loss to a household.

7 U.S.C. § 2023(b).  Moreover, SNAP regulations also specifically provide for retroactive benefits, such as those sought by Pennsylvania:

> The State agency shall restore to households benefits which were found by any judicial action to have been wrongfully withheld. If the judicial action is the first action the recipient has taken to obtain restoration of lost benefits, then benefits shall be restored for a period of not more than twelve months from the date the court action was initiated.

7 CFR § 273. 17(a)(2).  Case law in the Third Circuit and elsewhere further reinforces the propriety of retroactive benefits, especially when, as here, the Court found that benefits had been wrongfully withheld.  *See, e.g.*, *Robinson v. Block*, 869 F.2d 202, 208 (3d Cir. 1989) (USDA Secretary agreed to stipulate that, upon a finding of whether certain siblings "lived together," USDA was "required to make any necessary adjustments in the allotment of food stamps, including providing retroactive benefits under 7 U.S.C. § 2023(b)."); *Lynch v. Lyng*, 872 F.2d 718, 723 (6th Cir. 1989) ("While there is something inherently illogical in the awarding of retroactive food stamps—one who has been denied basic subsistence for one year is not really made whole by being given one year's worth of food in a lump sum at the end of the year—such a procedure is not at all foreign to the food stamp program.  **Retroactive benefits are frequently paid when benefits are improperly terminated for a period of time.**") (emphasis added).

Defendants' purported need to "clarify" a point that is already clear under the laws and regulations regarding the SNAP program only further emphasizes Defendants' bad faith non-compliance with this Court's Preliminary Injunction Order.

### 4.      Defendants' Past and Present Practices Provide for Retroactive Benefits

Not only is the law clear that retroactive benefits are available when FNA has wrongfully withheld SNAP benefits, Defendants' own history of processing requests for emergency allotments under the FFCRA demonstrates that retroactive benefits are a routine method to ensure beneficiaries receive the appropriate allotment.  For instance, Pennsylvania's request for emergency allotments for March and April 2020 was made on March 30, 2020.[2]  The March payments were approved by USDA (albeit under its unlawfully narrow interpretation of FFCRA emergency allotments) on April 2, 2020 and were issued in April, retroactively.[3]

In fact, that treatment of Pennsylvania's March 30, 2020 request was not unique.  FNS has routinely approved state requests to pay emergency allotments in months later than the months for which they are issued.  Based on the information links provided on USDA's website,[4] of the 53 jurisdictions which have SNAP programs (the 50 states plus the District of Columbia, Guam, and the Virgin Islands), at least 31 have issued some of their emergency allotments retroactively.  At least eight states (California, Hawaii, Idaho, Kansas, Nebraska, Nevada, South Dakota, and Vermont) have issued all of their emergency allotments retroactively (generally in the month after the month for which the benefits are issued).

FNS has also routinely approved state requests to pay Pandemic Electronic Benefits Transfer (P-EBT) benefits retroactively.[5]  P-EBT is not SNAP (although FNS lists P-EBT

---

[2] U.S. Dep't of Agric., Food & Nutrition Serv. *Pennsylvania: COVID-19 Waivers & Flexibilities*, https://www.fns.usda.gov/disaster/pandemic/covid-19/pennsylvania (last visited Oct. 16, 2020).
[3] *Id.*
[4] U.S. Dep't of Agric., Food & Nutrition Serv. *USDA Foods: COVID-19 Waivers by State* https://www.fns.usda.gov/disaster/pandemic/covid-19/usda-foods-waivers-flexibilities (last visited Oct. 16, 2020).
[5] *Id.*

waivers with SNAP COVID-19 waivers).  P-EBT is a program separately authorized by the

FFCRA, which pays benefits to cover the cost of meals for children who had received subsidized

school meals, and whose schools were closed due to COVID-19.  All jurisdictions operating P-

EBT programs received approval from USDA for P-EBT for retroactive periods, and at least

twelve received approval for completely retroactive programs (Alaska, Georgia, Hawaii, Idaho,

Iowa, Montana, Mississippi, Nevada, Oklahoma, South Carolina, Utah, and the Virgin Islands).

For example, Idaho was approved by USDA on August 13, 2020 to provide P-EBT benefits for

the period from March 23 through June 3, 2020.  Additionally, four states (Alabama, Arizona,

California, and Louisiana) received approval to retroactively amend their P-EBT waivers to add

tens of thousands (and in some states, over 100,000) additional children.

The process for cleanup one-time issuances ("OTIs") similarly involves the payment of

retroactive benefits.  In Pennsylvania, OTIs provide emergency allotments for households that

were not originally approved for them because their SNAP benefits were authorized after the

date when data was pulled to issue emergency allotments for a given month.[6]  USDA approves

payment of those OTIs to occur in a later month, specifically, for example, March 2020 OTIs

being issued in May 2020 and April 2020 OTIs being issued in June 2020.[7]

It is indisputable, therefore, that under the APA, SNAP, and Defendants' past and current

practices under the FFCRA, retroactive benefits are an available remedy where, as here, a party

has been denied the benefits to which she or he is entitled.  The Preliminary Injunction clearly

applies to **any** Pennsylvania request for emergency allotments submitted after the entry of the

---

[6] Initial Approval (Apr. 2, 2020), *available at* https://fns-
prod.azureedge.net/sites/default/files/resource-files/PA-SNAP-COV-EmergencyAllotments-
Approval2.pdf (last visited Oct. 16, 2020) (authorizing issuance of "[c]leanup OTIs … to capture
households authorized for SNAP benefits after the initial data pull").
[7] *Id.*

Preliminary Injunction Order, regardless of whether that request includes emergency allotments for prior months.  Defendants' claimed confusion is a transparent effort to delay implementing this Court's lawful and valid Preliminary Injunction Order.

    **D.**    **Defendants Are Not Entitled to a Stay Pending Appeal**

        **1.**    **In the Absence of an Appeal, An Order Cannot be Stayed Pending Appeal**

Remarkably, Defendants purport to seek a stay of the Preliminary Injunction Order "pending appeal."  They do so notwithstanding the fact that they have not actually filed an appeal. Fed. R. Civ. P. 62(d) provides that "**[w]hile an appeal is pending** from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  (emphasis added).  Without even a notice of appeal filed and pending, Defendants' request for a stay pending appeal is premature.  *E.g.*, *Guidiville Rancheria of Cal. v. United States*, No. 12-cv-1326 YGR, 2014 WL 5020036, at *3 (N.D. Cal. Oct. 2, 2014) (denying a motion for stay of an interlocutory order as premature where "[t]here [was] no appeal pending").

The cases cited by Defendants provide no support for entry of a stay.  Neither *In re Revel, AC, Inc.*, 802 F.3d 558 (3d Cir. 2015)[8] nor *Singer Management Consultants, Inc. v. Milgram*, 650 F.3d 223 (3d Cir. 2011)[9] addresses the stay of an interlocutory order pending appeal under Fed. R. Civ. P. 62(d).  Indeed, *Singer Management Consultants* does not address a stay pending

---

[8] This case discusses a stay pending appeal originating in bankruptcy court pursuant to Fed. R. Bankr. P. 8007, where the moving party had, in fact, filed an appeal.
[9] This case does not even discuss stays of litigation and instead concerns the question of whether a temporary restraining order is a judgment on the merits entitling the party receiving the temporary restraining order to a prevailing-party claim under 42 U.S.C. § 1988.

appeal at all.  Defendants cite no precedent that would allow a stay under Fed. R. Civ. P. 62(d) to proceed before the appeal is filed.

Defendants offer no explanation for their failure to file an appeal where, as here, they refuse to comply with the terms of the Court's Preliminary Injunction Order.  If Defendants believe this Court wrongly decided the issues, the appropriate remedy would be to file an appeal and then, after the appeal was filed, seek leave to be excused from compliance with the Order via a stay.  Instead, Defendants have declared themselves the ultimate judge and have unilaterally decided not to comply with the terms of the Court's Preliminary Injunction Order while simultaneously denying Plaintiffs the relief to which they are entitled.

## 2. Even If Defendants Had Filed an Appeal, A Stay Pending Appeal Would Not be Appropriate

"[A] stay of an injunction pending an appeal is 'an extraordinary remedy' and is 'rarely granted.'"  *Victory v. Berks Cty.*, No. 18-5170, 2019 WL 2368579, at *5 (E.D. Pa. June 3, 2019) (quoting *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, No. 13-11, 2013 WL 11277419, at *1 (3d Cir. Feb. 8, 2013)).  USDA has not made the required showing to support such an extraordinary remedy.  In order to grant such a stay, the Court must consider: "(1) whether the stay applicant has made a strong showing of the likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Kathleen S. v. Dep't of Pub. Welfare*, 10 F. Supp. 2d 476, 477-78 (E.D. Pa. 1998) (citations omitted).

In their Motion, Defendants cast these elements as equivalent to the standard for the preliminary injunction, essentially rehashing the arguments the parties have already made and revisiting the issues the Court has already decided in Plaintiffs' favor.  This as much as anything

demonstrates that Plaintiffs are seeking an untimely motion for reconsideration in advancing its arguments.  Moreover, an analysis of each factor shows that nothing has changed to require the Court to reach a different conclusion.  Each of the four factors weighs in favor of denying the requested stay.

          **a.**        **Defendants Cannot Show a Likelihood of Success on the Merits**

Contrary to Defendants' representation, based on inapplicable case law, it is not enough for Defendants to show a "reasonable chance" of winning.  Defs.' Mot. at 8.  Instead, Defendants need to make a "strong showing of the likelihood of success on the merits."  *Kathleen S.*, 10 F. Supp. 2d at 477-78.  This Court already ruled that Defendants are not able to make such a showing.  *See Gilliam*, 2020 WL 5501220, at *9-15.

Defendants offer two bases in support of their assertion that they have a reasonable chance of winning.  First, Defendants point to the *Hall* decision, *Hall v. U.S. Dep't of Agric.*, No. 20-CV-03454-HSG, 2020 WL 3268539 (N.D. Cal. June 17, 2020), noting that another court has ruled differently on the issue.  The *Hall* case was briefed by both Plaintiffs and Defendants in connection with the preliminary injunction motion.  Pls.' Mot., Dkt. 4, at 20-22; Defs.' Opp. at 2, 7-8, 11, 12 and 18.  Significantly, the Court also recognized the *Hall* decision in its opinion but nonetheless decided the issue differently.  *Gilliam*, 2020 WL 5501220, at *10 n.11.  Second, Defendants, citing their own opposition to the preliminary injunction motion, argue that USDA's reading of the Section 2302 is consistent with Congressional intent.  Again, this issue was briefed by the parties in connection with the preliminary injunction motion and was decided by the Court.  *See* Pls.' Mot. at 17-20; Defs.' Opp. at 9-14; *Gilliam*, 2020 WL 5501220, at *10-15. In short, Defendants offer nothing other than a rehash of the preliminary injunction briefing—a clear attempt to seek reconsideration—to suggest they have a likelihood of success in support of their improper request for a stay.  In fact, having considered these issues, the Court in issuing its

Preliminary Injunction Order concluded that "USDA's interpretation of, and Guidance regarding,

Section 2302(a)(1) is contrary to law.  Accordingly, Plaintiffs have demonstrated a likelihood of

success on the merits."  *Gilliam*, 2020 WL 5501220, at *15.

> **b.      Defendants Have Failed to Demonstrate They Will Be Irreparably Injured Absent a Stay**

Defendants argue that they will face irreparable injury by the depletion of the limited

pool of USDA resources, which may result in a reduction of benefits to all recipients, including

Plaintiffs.  Again, Defendants unsuccessfully made this argument in their opposition to the

preliminary injunction motion. Defs.' Opp. at 19-20.  The Court considered this argument and

rejected it.  The Court noted that before any reduction would take place, USDA must alert

Congress of the anticipated need to reduce allotments so Congress may appropriate additional

funds. *Gilliam*, 2020 WL 5501220, at *3.  Moreover, the Court observed that:

> At the preliminary injunction hearing, the Court asked defense counsel if USDA has ever had to implement an across-the-board allotment reduction because Congress declined or was unable to provide supplemental appropriations to prevent an allotment reduction.  (Hr'g Tr. at 44-46.)  Counsel responded that he did not know.  (*Id.*)  However, according to Robert Greenstein, a former administrator with the USDA's Food and Nutrition Service ("FNS"), it appears that "[t]hroughout the modern history of the food stamp program and SNAP," only once, in 1980, did FNS determine that current appropriations were inadequate and "Congress provided additional funds to prevent allotment reductions."  (Decl. of Robert Greenstein ¶¶ 8, 13, ECF No. 14-1.)  Moreover, "[s]ince then, regardless of the political party controlling the White House or Congress, regardless of economic conditions, and regardless of the relative popularity or unpopularity of the Food Stamp Program or SNAP, Congress, USDA, and the President have worked together to prevent allotment reductions."  (*Id.* at ¶ 16.)

*Id.* at *7 n.3.  Finally, the Court explained that "the injunction sought by Plaintiffs does not

impose on USDA any additional burden beyond that imposed by the FFCRA—they merely seek

to compel USDA to fulfill its existing obligations under the law."  *Id.* at *16.

Defendants have proffered no evidence, and have not asserted, that they lack the funds needed to issue the emergency allotments requested by Pennsylvania pursuant to the Preliminary Injunction Order.  Nor have Defendants proffered any evidence that any potential budgetary shortfall has been brought to Congress's attention and ignored.  Defendants should not be rewarded for flouting this Court's Preliminary Injunction Order and failing to seek funds to comply with their legal obligations.  Furthermore, the fact that complying with a preliminary injunction may be expensive is not necessarily enough to demonstrate irreparable injury.  *See, e.g.*, *Contractors Ass'n v. City of Phila.*, 739 F. Supp. 227, 229 (E.D. Pa. 1990) (holding that although compliance with a court order may cost the City of Philadelphia $73,533,000, "more is needed to meet the irreparable injury requirement of Fed.R.Civ.P. 62(c)").  Defendants have not presented anything "more."

> **c.** **Issuance of the Stay Will Cause Harm to Other Interested Parties**

Unlike the purported harm to Defendants, which is hypothetical and entirely of their own creation, Plaintiffs here are suffering and will continue to suffer actual harm as long as they are denied the emergency allotment benefits to which they are entitled under the terms of the Preliminary Injunction Order.  *See* Exs. 6 and 11 to Pls.' Mot.  Defendants dismissively ignore the harm to Plaintiffs and the other impacted SNAP beneficiaries, boldly asserting that "they will still receive the statutory maximum, just like SNAP-eligible families in every other State." Defs.' Mot. at 13.

Defendants offer no reasoned explanation why the Court should ignore its own logic which led it to conclude that depriving "Plaintiffs—along with others comprising the approximately 40 percent of, and poorest among, Pennsylvania SNAP households—of any emergency allotments to address their temporary food needs resulting from the COVID-19 crisis

. . . easily qualifies as irreparable [harm]."  *Gilliam*, 2020 WL 5501220, at *16.  Not only have

Defendants asked the Court to reconsider its decision on this issue, they have offered no

significant argument in support of such reconsideration.

### d.      Public Interest Weighs Against Issuing a Stay of the Preliminary Injunction Order

Defendants argue that because the government is a party, the public interest merges with

the potential harm to Defendants.  However, the fact that the government is a party does not

obviate the need to consider the public interest.  *See Kathleen S.*, 10 F. Supp. 2d at 481 (holding

that "[t]here can be no question that a stay of this Court's Order is not in the public's interest.  It

is clearly in the interest of the public to enforce the mandate of Congress under the Americans

with Disabilities Act, requiring the Commonwealth to provide services to class members in the

most integrated setting appropriate to their needs.  A stay of this Court's Order will only

postpone the realization of that mandate for the members of the Plaintiff class, and such delay

can in no way promote the public's interest.").

When granting the Preliminary Injunction Order, the Court evaluated the public's interest

in the matter and concluded:

> [T]o the extent that the injunction may cause USDA to incur additional expenses
> or expend appropriations at a quicker pace, the Court concludes that these concerns
> are clearly outweighed by the public interest in providing immediate assistance to
> low-income SNAP households that would otherwise be eligible for relief but have
> not received much needed emergency allotments.

*Gilliam*, 2020 WL 5501220, at *16.  Defendants have not addressed the Court's conclusion that

the public has a legitimate interest in providing assistance to low-income SNAP households,

seeking reconsideration without new law or facts.

For all the reasons set forth above, not only is a stay inappropriate because there is no pending appeal, it is inappropriate because Defendants have failed to make the necessary showing to entitle them to that extraordinary remedy.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' untimely motion for reconsideration and improper motion to stay the Court's Preliminary Injunction Order pending their yet-to-be-filed appeal.  Further, Plaintiffs request that the Court order Defendants to immediately comply with the Preliminary Injunction Order and award any other relief the Court deems appropriate.

Dated: October 16, 2020                                    Respectfully submitted,

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr. (PA I.D. No. 54279)
Kenneth M. Kulak (PA I.D. No. 75509)
Timothy J. Geverd (PA I.D. No. 324802)
Adina D. Bingham (PA I.D. No. 89860)
Caitlin McKenna (PA I.D. No. 309397)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
john.lavelle@morganlewis.com
ken.kulak@morganlewis.com
timothy.geverd@morganlewis.com
adina.bingham@morganlewis.com
caitlin.mckenna@morganlewis.com

Louise Hayes (PA I.D. No. 78581)
Amy Hirsch (PA I.D. No. 42724)
COMMUNITY LEGAL SERVICES OF
PHILADELPHIA
1410 W. Erie Avenue
Philadelphia, PA  19140
Tel: (215) 227-2400
Fax: (215) 227-2435
LHayes@clsphila.org
AHirsch@clsphila.org

23

Elizabeth Soltan (PA I.D. No. 327510)
COMMUNITY LEGAL SERVICES OF
PHILADELPHIA
1424 Chestnut Street
Philadelphia, PA  19102
Tel: (215) 981-3700
Fax: (267) 765-6481
Esoltan@clsphila.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2020, a copy of Response In Opposition To Defendants' Motion for Clarification and a Stay of the Preliminary Injunction was filed electronically and served upon all counsel of record via the Court's ECF system.

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr.